## SAVACOOL *vs.* BOUGHTON.

A *ministerial officer* is protected in the execution of process, whether the same issue from a court of *limited* or *general* jurisdiction, although such court have not *in fact* jurisdiction in the case—provided that on the face of the process it appears that the court has jurisdiction of the *subject matter*, and nothing appears in the same to apprize the officer but that the court also has jurisdiction of the *person* of the party to be affected by the process.

DEMURRER to replication. The plaintiff declared in *trespass* for an assault, battery and false imprisonment. The defendant *pleaded*, 1. The general issue; 2. A justification, for that he as a *constable*, by virtue of an execution issued by a *justice of the peace*, on a judgment rendered against the plaintiff in *assumpsit*, for $7.38, arrested the plaintiff and committed him to jail; and 3. A similar justification, setting forth the judgment. The plaintiff *replied* to the second and third pleas *precludi non*, because, previous to the rendition of the judgment set forth by the defendant, the justice who rendered the same *did not issue any process* for the appearance of

him (the plaintiff in the suit in which the judgment was rendered,) and that he (the plaintiff) did not direct or authorize the justice *to enter a judgment by confession* in favor of the plaintiffs in the suit, against him (the plaintiff in this cause,) nor did the parties in the said suit *appear* before the justice and *join issue*, pursuant to the provisions of the $50 act; and this, &c. wherefore, &c. To this replication the defendant demurred, and the plaintiff joined in demurrer.

*M. Taggart*, for defendant. The execution, being regular upon its face, is sufficient to justify the constable. The justice had jurisdiction of the subject matter, the action being assumpsit. Here was no excess of jurisdiction, the judgment was for less than $50. The constable was not bound to inquire whether the judgment set forth in the execution was regularly and duly rendered. Had the replication charged the defendant with knowledge of the fact that the justice had not jurisdiction of the *person* of the party against whom the judgment was rendered, it might have been good. The counsel cited, in support of these positions, 9 *Johns. R.* 229; 10 *id.* 138, 365; 12 *id.* 396; 13 *id.* 184.

*P. L. Tracy*, for plaintiff. The replication negatives every mode in which a judgment could regularly have been obtained before the justice. A justice's court is a court of *limited* jurisdiction. Every tribunal proceeding under special and *limited powers* decides at its peril; and hence it is that process issuing from a court not having jurisdiction is no protection to the court, to the party, nor even to a *ministerial officer* who innocently executes it. 15 *Johns. R.* 157. Where a *summons* is the regular process, and a *warrant* can issue only upon oath made, and a warrant is issued without oath, the justice has no jurisdiction over the person of the defendant, and all persons concerned in the arrest are trespassers. 1 *Wendell*, 213. Consequently, a ministerial officer is a trespasser. If a court of limited jurisdiction issues a process which is illegal and not merely erroneous, or if a court, whether of limited jurisdiction or not, undertakes to hold cognizance of a cause without having obtained jurisdiction of the

UTICA,
July, 1830.

Savacool
v.
Boughton.

*person* by having him before them in the manner required by law, the proceedings are void ; and in the case of a limited or special jurisdiction, the magistrate attempting to enforce a proceeding founded on any judgment, sentence or conviction in such a case, becomes a trespasser. 19 *Johns. R.* 40.

*By the Court,* MARCY, J. What an officer is required to shew to justify himself in the execution of process, is not very clearly settled. There is considerable contrariety of authority on the subject. Where it appears on the face of the process that the court or magistrate that issued it had not jurisdiction of the subject matter of the suit, or of the person of the party against whom it is directed, it is *void*, not only as respects the court or magistrate and the party at whose instance it is sued out, but it affords no protection to the officer who has acted under it.

Where the court issuing the process has *general jurisdiction*, and the process is regular on its face, the officer is not, though the party may, be affected by an irregularity in the proceedings. Where a judgment is vacated for an irregularity, the party is liable for the acts done under it ; but the officer has a protection by reason of his regular writ. 1 *Lev.* 95. 1 *Sid.* 272. 1 *Strange*, 509.

More strictness has been required in justifying under process of courts of *limited jurisdiction.* Many cases may be found wherein it is stated generally that when an inferior court exceeds its jurisdiction, its proceedings are entirely void, and afford no protection to the *court*, the *party*, or the *officer* who has executed its process.

This proposition is undoubtedly true in its largest sense where the proceedings are *coram non judice*, and the process by which the officer seeks to make out his justification shews that the court had not jurisdiction ; but I apprehend that it should be qualified where the subject matter of the suit is within the jurisdiction of the court, and the alleged defect of jurisdiction arises from some other cause. A court may have jurisdiction of the subject matter, but not of the person of the parties. If it does not acquire the latter, its proceedings derive no validity from the former. A justice of the peace who

should give judgment against a person on a promissory note under fifty dollars, without having issued process of any kind against him, or taken his confession, or without his voluntary appearance in court, would exceed his jurisdiction and be responsible to the party injured; so would the party who procured the court to exceed its authority. ) But would the officer to whom an execution on this judgment had been issued be liable for acts done in obedience to it, if nothing appeared to shew that the justice had not jurisdiction of the defendant's person? This is the question presented by the demurrer in this case.

A distinction has long existed in cases of this kind between the court which exceeds its jurisdiction and the party at whose instance it takes place, and a mere ministerial officer who executes the process issued without authority. This prevails, as we have seen, where a judgment has been obtained in a court of *general jurisdiction* which is subsequently set aside for irregularity. The officer has a protection that the party has not, and that whether the court from which the process issues is a court of general or limited jurisdiction. The right of a mere ministerial officer to *justify* under his process where the court or party cannot, was considered but not settled in the case of *Smith* v. *Bancker and others*, decided in 1734. This case is found in 2 *Strange*, 993, 2 *Barnard*, 331, *Cunn.* 89, 127, *Cases tempt. Hardwicke*, 62, 2 *Kelyn.* 144, *pl.* 123. The reports agree as to the facts, but not as to some points in the opinion of the court. Process was issued from the chancellor's court of Oxford against Smith, who was arrested and committed to jail. The proceedings were instituted without proving what was requisite to give the court jurisdiction. The plaintiff who procured the proceedings, the vice chancellor who held the court, and the officers who executed the process, were all sued by the defendant Smith for false imprisonment. They united in their plea of justification and were all pronounced guilty. Sir *John Strange* makes the court say that some of the defendants, namely, the officer and gaoler, might have been excused if they had justified without the plaintiff and vice

chancellor. The court of common pleas in England, in their opinion in the case of *Perkin* v. *Procter and Green*, 2 *Wilson*, 382, say that Lord *Hardwicke* denied that such could have been the case. It appears from the case as reported in *Hardwicke's Cases*, 69, that the point of the officers' liability was not settled; for it is there said that there was no need of giving a distinct opinion as to the action lying against them.

In *Hill* v. *Bateman*, 2 *Strange*, 710, the distinction in favor of the officer is clearly taken. The plaintiff had been fined under the game laws, and was immediately sent to bridewell, without any attempt to levy the penalty upon his goods. This the justice had not a right to do, and was held liable for the imprisonment; but the constable was justified, because the matter was within the jurisdiction of the justice. I understand by this case that the justice had not authority, or in other words, had not jurisdiction, to issue process to commit the party until he had attempted to levy the fine upon his goods; but that after he had made that attempt without success, he had authority to commit him. The process, though unauthorized by the circumstances of the case, would, under other circumstances, have been proper. The issuing of the process was a matter within the justice's jurisdiction. This was enough for the officer's justification. It is further said in this case, if the justice makes a warrant which is plainly out of his jurisdiction, it is no justification. This I understand to mean a warrant which appears on its face to be such as the justice could in no case issue.

The views I have of this case are confirmed by that of *Shergold* v. *Holloway*, 2 *Strange*, 1002. There the justice issued a warrant on a complaint for not paying wages, and the defendant, a constable, arrested Shergold on it. He was sued for this arrest. The court said the justice had no authority in any instance to proceed by warrant; a summons being the only process. The constable could not therefore justify; he was presumed to know that under no circumstances could a warrant be issued in such a case; therefore the court say there was "no pretence for such a jurisdiction." This decision would doubtless have been different if it had

appeared that under any state of things a proceeding by warrant was allowable in such a case; for then the court would assume for the officer's protection that such a state of things did exist, or at least, he should not be required to judge whether it did or not. His duty and his protection both depend upon the assumption that the justice had determined correctly, that those circumstances had happened which called for a warrant, if under any circumstances a warrant could issue. In the case of *Moravia* v. *Sloper, Willes,* 30, the same distinction which has been noticed in the cases before referred to is still more distinctly put forth. It is there said that "though in case of an officer who is obliged to obey the process of the court, and is punishable if he does not, it may not be necessary to set forth that the cause of action arose within the jurisdiction of the court, it has always been holden, except in one case, (the correctness of which Ch. J. *Willes* controverted in another part of his opinion,) and we are all clearly of opinion that it is necessary in the case of a plaintiff himself."

Lord Kenyon says, in the case of *The King* v. *Danser,* 6 *T. R.* 242, "a distinction indeed has been made with respect to the persons against whom an action may be brought for taking the defendant's goods in execution by virtue of the process of an inferior court, where the cause of action does not arise within its jurisdiction; the *plaintiff* in the cause being considered a trespasser, but not the *officer* of the court." A court of admiralty, I apprehend, will not be considered a court of general jurisdiction. In relation to its proceedings, Buller, J., says, in the case of *Ladbroke* v. *Crickett,* 2 *T. R.* 653, if upon their face "the court had jurisdiction, the officer was bound to execute the process, and could not examine into the foundation of them; and that will protect him."

There are several cases in our own reports which are supposed to militate against the distinction recognized in the foregoing cases; I apprehend, however, that most of them may be reconciled with those decisions which support it. The decision in the case of *Borden* v. *Fitch,* 15 *Johns. R.* 121, was, that a court must not only have jurisdiction of the subject matter, but of the person of the parties, to render its

proceedings valid; and if it has not jurisdiction of the person, its proceedings are absolutely void. It will be recollected that the person who wished to avail himself of the proceedings of the court whose jurisdiction was impeached, was a party to them. There was no occasion or opportunity afforded by that case of considering the question involved in this, the liability of the officer who, as a minister of the court, has executed its process issued on such proceedings.

The case of *Cable* v. *Cooper*, (15 *Johns. Rep.* 152,) deserves a more minute consideration. One Brown was committed on a *ca. sa.* to the custody of the defendant, who was sheriff of Oneida county, and discharged by a supreme court commissioner under the *habeas corpus* act. The defendant, when prosecuted for the escape of Brown, offered to justify by shewing the discharge; but a majority of the court decided that the proceedings under the *habeas corpus* act before the commissioner were *coram non judice* and therefore void. The principle of this decision is, that the power to discharge under that act does not apply to the case of a prisoner who *"is convict or in execution by legal process."* [Brown was in execution by legal process, and this was well known to the defendant, for he had the *ca. sa.* and held the prisoner. Whatever appeared upon the face of the discharge, he knew, if he rightly understood the powers of the commissioner, it was no authority for him to release Brown. If the discharge did not relate to the imprisonment on the *ca. sa.,* it was certainly no authority to release him from confinement thereon; and if it did relate to that imprisonment, then it shewed on its face a want of jurisdiction in the officer who granted it; for he could not discharge a person in execution by legal process. Again, the sheriff who held the prisoner might well be regarded as a party to the proceeding before the commissioner for the discharge; for the *habeas corpus* must have been directed to him, and his return thereto shewed the true cause of Brown's detention.

The cases of *Smith* v. *Shaw*, 12 *Johns. R.* 257, and *Suydam & Wyckoff* v. *Keys*, 13 *id.* 444, have a tendency to obliterate or at least confound the distinction which the other cases seem to me to raise in favor of the officer. I am free

to confess that the reasoning and conclusion of the judge who delivered the dissenting opinion in the former case are more satisfactory to me than those contained in the opinion adopted by a majority of the court. Smith, in that case, was not looked upon in the light of a mere ministerial officer. He was superior in authority to *Hopkins* and *Findley*, who had illegally imprisoned the plaintiff, and his liability was put expressly upon the ground that he had ratified and confirmed their acts, and exercised other restraint over the plaintiff than merely continuing the original imprisonment. If he had only refused to discharge the prisoner, he would not, as is strongly intimated by the court, have been held liable. This case was not considered by the court as presenting the question which arises in the one now before us, and therefore it can afford but little authority to guide our present determination.

It seems to me somewhat difficult to reconcile the decision in the case of *Suydam & Wyckoff* v. *Keys,* with the doctrine I am endeavoring to establish, or with the principles of some other cases which have been decided here. The defendant was a collector of a tax which had been voted by a school district in Orange county, as assessed by the trustees. They had authority to assess, but were confined in their assessments to the *resident inhabitants* of the district. The plaintiffs having property in the district, but actually resident in New-York, were included among the persons assessed, and designated on the warrant issued to the defendant as *inhabitants of the district.* He took their property by virtue of this warrant, and was held liable in an action of trespass. It appears to me the defendant, acting merely as a ministerial officer, should have been allowed the protection of his warrant, which did not shew upon the face of it an excess or want of jurisdiction in the trustees. I cannot distinguish this case from a whole class of cases, beginning with the earliest reports and coming down to this, holding that such a warrant is a protection to the officer executing it, unless it is to be distinguished from cases otherwise similar, by the fact that the want of jurisdiction in the trustees to make the

assessment on the plaintiffs was to be presumed to be within the knowledge of the officer, and that he was bound to act on this knowledge, in opposition to the statements of his warrant. \The decision, however, is not put on such ground, but upon the broad principle that the officer must see that he acts within the scope of the legal powers of those who commanded him.[ This principle requires a ministerial officer to look beyond his precept, and examine into extrinsic facts beyond the fact of jurisdiction of the subject matter generally, or under certain circumstances. Such, I apprehend, was not the doctrine applied to the case of *Warner* v. *Shed*, 10 *Johns. R.* 138. There the officer was justified by his process, as that shewed the justice's jurisdiction of the subject matter. "He was not bound," the court says, "to examine into the validity of the proceedings and the process." The collector's warrant in the former case, as well as the constable's *mittimus* in the latter, shewed jurisdiction of the subject matter in the officers issuing the process. In the former case, it appeared upon the face of the process that the plaintiffs were resident inhabitants, and as such they were liable to be assessed; and I should think that the collector was no more bound to examine into the fact of residence which had been passed on by the trustees, than the constable was to look into the proceedings of the special sessions under whose authority he acted.

I find still greater difficulty in reconciling the case of *Suydam & Wickoff* v. *Keys* with that of *Beach* v. *Furman,* 9 *Johns. R.* 229. The court assume, though they do not directly decide, that Sarah Furman was not, by reason of being a female, liable to be assessed to work on the highways, yet they held that the justice who issued, at the instance of the overseer of the highways, the warrant on which her property was taken and sold for this illegal assessment, and the constable who executed it, both protected, because they acted ministerially and in obedience to the commissioners and overseer of highways, who had jurisdiction over the subject matter, the assessment of highway labor. Let us compare this case with that of *Suydam & Wyckoff* v. *Keys,* and see if they can stand together. The commissioners had

jurisdiction of the subject matter, the assessment of labor.
The trustees had jurisdiction of the subject matter, the as-
sessment of a district tax. The commissioners assessed a
person who, by reason of her sex, was not liable to be as-
sessed, as the court in giving their opinion conceded. The
trustees assess persons who, by reason of their residence out
of the district, were not liable to be assessed; the justice
and constable who enforce the commissioners' assessment
by taking the property of the person illegally assessed are
protected; the constable who enforces the illegal assess-
ment of the trustees, by taking the property of the persons
illegally assessed, is held liable as a trespasser. I think these
cases cannot well stand together, and if one must be given
up, I do not hesitate to say it should be *Suydam & Wyckoff*
v. *Keys*.

The remark of this court in the case of *Gold* v. *Bisssell*, 1
*Wendell*, 213, "that where a warrant cannot legally issue
without oath, but is so issued, all the parties concerned in the
arrest under such process are trespassers," was not intended,
I presume, to apply to an officer who had no knowledge,
from the warrant or otherwise, that it had not been duly su-
ed out. A remark somewhat similar is made by Trimble, J.
in *Elliott*, v. *Peirsall*, 1 *Peters' U. S. Rep.* 340; but the decis-
ion of that case did not call for any such distinction as is rais-
ed in the one now under consideration. I have felt that the
case of *Wise* v. *Whithers*, 3 *Cranch*, 331, is a direct authority
against giving to the officer the protection that is now claim-
ed for him. The plaintiff in that case was a magistrate in the
*District of Columbia*, and, as such, not subject to do military
duty. He was fined for neglect of such duty, and a warrant
for the collection of the fine issued to the defendant, who
seized his property thereon; for this act he was prosecuted.
The only point much considered in that case was that which
involved the question as to the plaintiff's exemption from mil-
itary duty; but that which related to the defendant's protec-
tion under his warrant was only glanced at in the argument
of the counsel and in the decision by the court. The dis-
tinction contended for in this case was scarcely raised there,
and the attention of the court does not appear to have been

drawn to a single case in which it has ever been noticed. The chief justice, in the opinion of the court, merely observes, that it is a principle that a decision of such a tribunal, (a tribunal of limited jurisdiction,) clearly *without* its jurisdiction, cannot protect the officer who executes it. I would, with deference, ask whether there is not an error in the application of the principle which the chief justice lays down to the case then before the court? He must mean, by a decision being clearly *without the jurisdiction of the court,* a sentence or judgment on a matter not within its cognizance. Was the subject matter of that cause beyond the cognizance of a court martial? It appears to me that it was not. The power and duty of the court was to punish and fine delinquents; consequently, it had jurisdiction over the subject matter, but not over the person. There was nothing in the process which the ministerial officer executed to apprize him that the court had not jurisdiction of the *person.* It seems to me that it was not a case to which the principle laid down by the court was applicable; but it would have been such a case if there had been a want of jurisdiction over the subject matter. I can scarcely consider, therefore, the determination of the supreme court of the U. States in the case of *Wise* v. *Withers* a deliberate decision on the question now before us. If it was to be viewed in that light, we should be called upon, by the great learning and high character of that court, to hesitate long and examine carefully before we decided a point conflicting with such decision.

There is certainly high authority for the distinction which I am disposed to recognize in this case; and, in my judgment, the same principle which gives protection to a ministerial officer who executes the process of a court of *general jurisdiction* should protect him when he executes the process of a court of *limited jurisdiction,* if the *subject matter* of the suit is within that jurisdiction, and nothing appears on the face of the process to shew that the *person* was not also within it.

The following propositions, I am disposed to believe, will be found to be well sustained by reason and authority :

That where an inferior court has not jurisdiction of the subject matter, or having it has not jurisdiction of the person

of the defendants, all its proceedings are absolutely void; neither the members of the court, nor the plaintiff, (if he procured or assented to the proceedings,) can derive any protection from them when prosecuted by a party aggrieved thereby.

If a mere ministerial officer executes any process, upon the face of which it appears that the court which issued it had not jurisdiction of the subject matter or of the person against whom it is directed, such process will afford him no protection for acts done under it.

If the subject matter of a suit is within the jurisdiction of a court, but there is a want of jurisdiction as to the *person* or place, the officer who executes process issued in such suit is no trespasser, unless the want of jurisdiction appears by such process. *Bull. N. P.* 83. *Willes, 32, and the cases there cited by Lord. Ch. J. Willes.*

I am therefore of opinion that the execution issued by the justice to the defendant, it being on proceedings over the subject matter of which he had jurisdiction, and the execution, not shewing on its face that he had not jurisdiction of the plaintiff's person, was a protection to the defendant for the ministerial acts done by him in virtue of that process.

Judgment on demurrer for the defendant, with leave to the plaintiff to amend his replication on payment of costs.