ALBANY,
Oct. 1836.

Hoose
v.
Sherrill.

</div>

New trial granted.

---

## Hoose vs. Sherrill and others.

Where a *justice of the peace* justifies in an action of *false imprisonment*, under an execution on a judgment rendered by him, and in his plea sets forth that the first process in the suit before him was by *summons*, it is not necessary for him to allege that the defendant in such process was a *free holder* or *an inhabitant having a family* in the county where he resides, or to negative the fact that he was a *non-resident*.

Where the first process is by *summons* when it should have been by *warrant*, the proceeding is not *coram non judice*, nor is the defendant remediless ; advantage may be taken of the error by objection before the justice on the return of the summons, and if he err in deciding such objection, a *certiorari* lies.

Mr. Justice Bronson dissented ; see his opinion.

FALSE IMPRISONMENT. The plaintiff declared in the usual form for an assault, battery and false imprisonment, against the defendant *Sherrill* and two other persons. Sherrill alone appeared to the action, and pleaded that at the time when, &c. he was a *justice of the peace* of the county of Tompkins, empowered to take cognizance of and to try actions for the recovery of demands of the value of fifty dollars or under, that the trustees of the village of Ithaca applied to him to issue a *summons* against the plaintiff, according to the provisions of the act to incorporate the village of Ithaca, for an alleged violation of an ordinance or by-law of the village ; that he accordingly issued a summons, in due form of law, to a constable of the county, commanding him to summon Hoose to appear before him, at his office, on the sixth day of June then next, to answer to the trustees of the village in a plea of debt. That the summons was duly returned by the constable, *personally served,* and on the day appointed the *trustees appeared* and declared in debt for a

ALBANY,
Oct. 1836.

Hoose
v.
Sherrill.

penalty of five dollars, for the violation of a village ordinance in relation to the market. That the cause was then adjourned, on the application of the trustees, until the next day, when, after hearing the evidence given in the cause, he rendered judgment in favor of the trustees for $5 debt and $2, 24 costs, and in pursuance of the provisions of the act entitled " An act to amend the act entitled an act to incorporate the village of Ithaca," he ordered Hoose to be imprisoned in the common jail of the county of Tompkins for 30 days, unless the penalty and costs were sooner paid; and on the 10th July, 1834, at the request of the trustees of the village, he issued an *execution* on the judgment, commanding any constable of the county to levy the amount of the judgment of the goods and chattels of Hoose, and to bring the money before him, &c. and for want of goods and chattels whereon to levy, to take the body of Hoose and convey the same to the keeper of the common jail, who was commanded to receive Hoose and keep him until duly discharged according to law; and on the back of such execution made an endorsement, certifying that the judgment on which the same had issued was rendered for the violation of an ordinance of the trustees of the village of Ithaca in relation to the market, and directing the keeper of the jail to keep Hoose in close custody in the jail of the county, for 30 days, unless the judgment should be sooner paid. Which execution was delivered to *Van Kirk*, one other of the defendants, a constable of the county, to be executed; who, for want of goods and chattels whereon to levy, arrested Hoose and conveyed him to the jail of the county, where he delivered him to *Cary*, the remaining defendant in this cause, the keeper of the jail, who received Hoose and detained him three days, when he was discharged by the trustees of the village, which are the several supposed trespasses, &c. concluding with a verification and prayer of judgment. To this plea the plaintiff interposed a general demurrer, and the defendant joined in demurrer.

*M. T. Reynolds,* for the plaintiff, contended that the plea was defective; that the defendant had failed to show that

he had obtained jurisdiction of the person of the plaintiff previous to the rendition of the judgment and the issuiug of the execution ; that he was bound to aver not only that he issued a *summons* and that it was *duly served*, but that such process was the species of process which he was authorized to issue in the case. This he could do only by averring that the plaintiff was a resident of the county in which the process issued, for if a non-resident, the statute positively prohibited the issuing of a summons, 2 R. S. 228, § 13, 17. He insisted that in reference to courts of limited jurisdiction, no presumptions were to be indulged ; but their authority must be clearly shown. He also urged that the plea was bad in not stating the time of the issuing of the summons, so that the court might judge whether it was in due form.

*C. P. Kirkland,* for the defendant, referred to the act incorporating the village of Ithaca, Session laws of 1821, p. 222, § 6, and the act amending the same, Sessions laws of 1828, p. 150, § 11, and contended that sufficient was alleged to show that the justice had jurisdiction as well of the subject matter as of the person of the plaintiff; and that in the absence of all allegation to the contrary the court would presume that the process of *summons* was the proper process in the case, and that it was regular in its form.

*By the Court,* NELSON, C. J. A justice has jurisdiction to issue a *summons* as the first process in the commencement of a suit before him, *in all cases* where the defendant is a *freeholder* or *an inhabitant having a family* within the county where the justice resides, 2 R. S. 227, § 13. Whether it was or was not the appropriate process in this particular case cannot affect this general jurisdiction. If a summons be issued in a case in which it is not the appropriate process, the objection, to be available to the defendant in such process, must be taken before the justice, and if he errs in his decision, the remedy of the party is by *certiorari ;* the proceeding will not be *coram non judice.* The general power will protect the magistrate and all officers concerned in the execution of the process from being treated as tres-

passers. The case of *Rogers* v. *Mulliner*, 6 Wendell, 597, is an authority for this principle : see also *Savacool* v. *Boughton*, 5 Wendell, 170. The summons was personally served, and whether there was a sufficient number of days between its issuing and the day of its return, is not material as it regards the defence in this case. The defect, if one exist, would go only to the regularity of the process, and not to the jurisdiction of the justice ; it might be cause for reversal of the judgment, but does not render the process a nullity. The plea sets forth abundant facts to show jurisdiction of the subject matter ; it refers to the statute giving the penalty for which the plaintiffs declared, and also to the remedy thereby prescribed. It also shows that the justice had jurisdiction of the person of the plaintiff. There must be judgment for the defendant, with leave to the plaintiff to amend.

Mr. *Justice* COWEN concurred.

Mr. *Justice* BRONSON dissented, and delivered the following opinion: The defendant attempts to justify the imprisonment by virtue of a judgment and execution, without showing that he acquired jurisdiction over the person of the plaintiff. The plea does not allege that the plaintiff appeared before the justice, nor that he was a resident of the county of Tompkins at the time the summons issued. As the action was not upon contract, but to recover a penalty under a village ordinance, the case did not come within the act of 1831 providing for a short summons, Session Laws of 1831. p. 403, § 30, 31, 33. The statute under which the defendant acted provides, that the process against non-resident defendants shall be by *warrant,* and that "no person shall be proceeded against by *summons* out of the county in which he resides." 2 R. S. 228, § 13, 17.

If the plaintiff was in fact a non-resident of the county, it is clear beyond all room for question, that the justice could not acquire jurisdiction by the issuing and service of a summons. There was not only the absence of all authority to proceed in that mode, but the issuing of a summons was

positively prohibited. A replication stating that the plaintiff was not a resident of the county, would have destroyed all pretence of a justification. To hold otherwise would be to invest magistrates with an unlimited control over the persons and property of individuals. The plaintiff has not replied, but has put in a demurrer; and this presents the inquiry whether the plea is not utterly defective. I cannot but think this a very plain question. Every plea of justification must show a lawful right to do the act complained of. This plea may be true, and yet the plaintiff, at the time the summons issued, may have been a resident of New-York or Boston. It is not enough to make out a possible, or even probable case, and then call upon the other party to impeach it; but the party pleading must allege all such facts as are necessary to make out a clear legal right to do the act which he attempts to justify. There is no intendment or presumption in favor of a plea in bar. On the contrary the maxim is, that every thing shall be taken most strongly against the party pleading, for it is to be intended that he will state his case as favorably to himself as possible. 1 Chit. Pl. 241, 521. If we test the plea by this well established rule, the presumption is that the plaintiff was not a resident of the county of Tompkins at the time the summons issued.

It is not enough in pleading to allege, in general terms, that the act was done in due form of law, or that the officer had jurisdiction; but the plea must show what in particular was done, and aver the existence of all the necessary facts to give jurisdiction. *Cleveland* v. *Rogers*, 6 Wendell, 438. *Lawton* v. *Erwin*, 9 id. 236.

The plea is clearly bad, unless a justice of the peace can protect himself under a judgment rendered without having obtained jurisdiction of the person of the defendant. That he cannot justify in such a case I should have thought almost too plain a matter for discussion, if it were not for the case of *Rogers* v. *Mulliner & Moores*, 6 Wendell, 597. A distinction may, I think, be taken between that case and the one under consideration. But if that case necessarily goes the length of deciding that a justice can protect himself

under a judgment rendered without jurisdiction, or, what is the same thing, a void judgment, I must be permitted to say that the decision is not supported by any other adjudication, and is contrary to well established principles.

Justices of the peace have no common law jurisdiction in civil cases. They are confined strictly to the authority which the statute has conferred, and can take nothing by implication. So far as regards mere matters of form and the regularity of their proceedings when parties are properly before them, their acts will be reviewed with liberality, and they will not be answerable for mere errors of judgment ; but if they proceed in a matter not within their cognizance, or without having acquired jurisdiction over the party in the forms prescribed by law, any judgment which they may render will be absolutely void. This doctrine has been so uniformly asserted by the courts that I shall not stop to cite cases in support of the general proposition. It is not peculiar to courts held by justices of the peace in civil cases, but applies to all courts and officers exercising a special and limited jurisdiction. They must pursue their authority, or their acts will be invalid. An insolvent's discharge, granted by the chief justice without jurisdiction, is utterly void. *Frary* v. *Dakin*, 7 Johns. R. 75. So also a discharge from imprisonment on *habeas corpus* by a supreme court commissioner, *Cable* v. *Cooper*, 15 Johns. R. 152. See also *Morgan* v. *Dyer*, 10 Johns. R. 162 ; *Wyman* v. *Mitchell*, 1 Cowen, 316.

The want of jurisdiction is fatal, in whatever court the matter may be adjudged. The principal distinction between courts of general and those of limited jurisdiction is, that in the one case jurisdiction will be presumed until the contrary appears, while in the other no such presumption is indulged, but they must show their authority in every case. In pleading the judgment of a superior court, it is enough to say that judgment was rendered, and it will lie on the other party to show a want of power ; but in pleading the judgment of an inferior tribunal, the authority to decide, as well as the judgment, must be alleged. The judgments of this and all other courts may be impeached for the want of jurisdiction.

In a government of laws no other doctrine can be tolerated. Want of jurisdiction is want of power ; and to say that a man may be deprived either of his liberty or his property without legal authority, is nothing less than the assertion of arbitrary power. Except where the proceedings are *in rem*, there must be jurisdiction over the person of the party to be affected by the judgment, as well as of the subject matter of controversy. It is against the first principles of justice that any one should be prejudiced in his legal rights without an opportunity to answer. In *Borden* v. *Fitch*, 15 Johns. R. 121, it was held that a decree of divorce made by the supreme court of Vermont, on the application of the husband against his wife, who resided in another state and had no notice of the proceedings, was absolutely void. Thompson, C. J., who delivered the opinion of the court, said, " to sanction and give validity and effect to such a divorce, appears to me to be contrary to the first principles of justice. To give any binding effect to a judgment, it is essential that the court should have jurisdiction of the person, and of the subject matter ; and the want of jurisdiction is a matter which may always be set up against a judgment, when sought to be enforced, or where any benefit is claimed under it. The want of jurisdiction makes it utterly void, and unavailable for any purpose." He refers to many cases, both in the English and American courts, which fully sustain that doctrine. In *Mills* v. *Martin*, 19 Johns. R. 33, Chief Justice Spencer said, " No lawyer will controvert the position, that to uphold and give validity to the proceedings of a court, it must have jurisdiction of the person of the defendant, and of the cause. The principle is applicable to all courts from the highest to the lowest." In *Shumway* v. *Stillman*, 4 Cowen, 292, the rule laid down in *Borden* v. *Fitch*, was reasserted. In *Dakin* v. *Hudson*, 6 Cowen, 221, the decree of a surrogate was held void for want of jurisdiction; and in *Latham* v. *Egerton*, 9 Cowen, 227, the judgment of a court of common pleas was held void on the same ground. In *Denning* v. *Corwin*, 11 Wendell, 627, a judgment record of this court, which did not show jurisdiction on its face, was held a nullity.

Hoose
v.
Sherrill.

The rule is more strict in relation to courts of special and limited, than it is in relation to those of general jurisdiction. If they exceed their authority, those who attempt to enforce their judgments may be treated as trespassers. This rule has very often been laid down so broadly as not only to include the court and the party suing out the process, but the ministerial officer who executes it. But it is now settled, in this court at least, that the ministerial officer will be protected, unless the want of jurisdiction appear on the face of the process. *Savacool* v. *Boughton*, 5 Wendell, 170. That the justice who exceeds his powers and renders a void judgment can justify under it, has never yet been adjudged, and, I think never should be. The distinction is between an erroneous judgment and one rendered without jurisdiction. The one is valid until reversed, the other is utterly void. Where a justice has the right to decide, he will not be answerable for an error of judgment; but when he acts without authority he must respond to the party who may be injured. *Miller* v. *Seare*, 2 W. Black. R. 1145.

In *Hill* v. *Bateman and others*, 1 Strange, 710, the defendant, Bateman, was a justice of the peace, and had convicted the plaintiff for destroying game, and though the plaintiff had effects which might have been destrained, the defendant sent him immediately to bridewell without endeavoring to levy the penalty of his goods. It was holden that an action for false imprisonment would lie against the justice, though the constable who executed the warrant might justify. The reporter says, it was agreed that where actions of this kind are brought against justices of the peace, they are obliged to show the regularity of their convictions. In *Smith* v. *Dr. Bouchier and others*, 2 Strange, 993, the vice chancellor of the University of Oxford was condemned in an action for false imprisonment, because he had issued a warrant for the arrest of the plaintiff without a sufficient oath. The court said that some of the defendants, as *the officer* and *gaoler*, might have been excused if they had justified without the plaintiff or the vice chancellor; yet by joining with them they had forfeited their justification—the *judge* and the *plaintiff* knew that the oath was not sufficient.

Judgment was given against all the defendants. In *Perkin* v. *Proctor*, 2 Wils. 385, this decision is cited with approbation, so far as relates to the vice-chancellor and the plaintiff, but it is doubted whether the officer and jailer could have been excused if they had justified separately, the whole proceeding being *coram non judice*. In *Crepps* v. *Durden*, Cowp. 640, a justice of the peace was held liable in trespass for an excess of jurisdiction. In *Wickes* v. *Clutterbuck*, 2 Bing. 483, the defendant was a justice of the peace and had convicted the plaintiff of an attempt to take fish in a certain pool, and imposed a fine of £5, and committed the plaintiff for non-payment of the fine. He was held liable in an action for false imprisonment, on the ground that the warrant of committment did not show that he had jurisdiction. Best, C. J., said, in trespass all are principals; and if an order be unlawful, *he who gives it* is as much responsible as he who executes it. In *Cropper* v. *Horton*, 8 Dowl. & Ryl. 166, the justice was held liable for an illegal commitment; and in *Davis* v. *Capper*, 10 Barn. and Cres. 28, the magistrate was subjected to an action because he had committed a party, charged with felony, for re-examination, for an unreasonable time, although the jury found that there was no improper motive. In *Weaver* v. *Price*, 3 Barn. & Ald. 409, two justices were held liable in trespass where they had exceeded their authority. See also *Read* v. *Wilmot*, 1 Vent. 220; *Gwinne* v. *Poole et al.* 2 Lutw. 935, 1560; and the remarks of Chief Justice Willes upon that case, in *Moravia* v. *Sloper and others*, Willes R. 30.

Without looking further into the English cases, it may, I think, be regarded as the settled doctrine of Westminster Hall, that a justice of the peace who exceeds his authority, or acts without jurisdiction, must answer as a trespasser to the party who may be injured. The same doctrine was asserted by this court nearly forty years ago, and has been uniformly followed ever since, unless the recent case of *Rogers* v. *Mulliner* may be considered as a departure from it.

In *Case* v. *Shepard*, 2 Johns. Cas. 27, the defendant was a justice of the peace before whom the plaintiff had been

indicted for a forcible entry and detainer. The plaintiff served a certiorari to remove the proceedings, but the defendant nevertheless proceeded to try the traverse and award restitution. The plaintiff brought trespass, and the court held that the delivery of the certiorari suspended the defendant's powers, and all the subsequent proceedings were *coram non judice*, and the defendant was a trespasser. Several of the cases which have already been mentioned were cited with approbation by the court, as governing the decision in the principal case. In *Percival* v. *Jones*, 2 Johns. Cas. 49, the defendant, who was a justice of the peace, was held liable in an action for false imprisonment for issuing an execution against the body of the plaintiff, who was exempt from imprisonment. What was said by the court in relation to the justice's acting as a ministerial officer in issuing process, and as such not being responsible, must be understood in reference to the particular circumstances of that case in which it was questionable, to say the least, whether the defendant ought to have been held liable. It was not a case of want of jurisdiction. The court certainly did not intend to reason one way and decide the other; nor did they intend to lay down a different rule from that laid down in *Case* v. *Shepard*, decided at the same term. In *Walsworth* v. *McCullough*, 10 Johns. R. 93, the defendant was a justice of the peace and had issued a warrant against the plaintiff, as the putative father of a bastard child. It was issued on the application of a person who falsely represented to the justice that he was the attorney for the overseers of the poor, who alone had the right to apply for the process; and because the warrant issued without legal authority, the defendant was held liable in an action for false imprisonment. In *Suydam* v. *Wyckoff*, 13 Johns. R. 444, the defendant had collected a tax which had been illegally assessed upon the plaintiff by the trustees of a school district; and the court said the collector as well as the trustees were liable as trespassers. So far as the collector is concerned, this decision is no doubt shaken by the case of *Savacool* v. *Boughton*. In *Cable* v. *Cooper*, 15 Johns. R. 152, it was said by Van Ness, J., who delivered the opinion of the court,

that every tribunal proceeding under special and limited powers, decides at its peril ; and hence it is that process issuing from such a court, not having jurisdiction, is no protection to *the court*, to the attorney, or the party, nor even to a ministerial officer who innocently executes it. This is a stern and sacred principle of the common law, which requires to be steadily guarded and maintained.

*Bigelow* v. *Stearns*, 19 Johns. R. 39, is not only a direct adjudication upon the point in question, but in most of its important features is precisely parallel to the case under consideration. The defendant, as a justice of the peace, convicted the plaintiff of an offence against the act for suppressing immorality, and imposed a penalty of $25, for the non-payment of which the plaintiff was committed to prison. Before imposing the fine the justice issued a precept, to cause the plaintiff to appear before him and answer the complaint ; this was personally served on the plaintiff by reading it to him and duly returned by the constable to the magistrate. The plaintiff did not appear. The conviction was held void, and the defendant was adjudged a trespasser, on the ground that he had not acquired jurisdiction over the person of the defendant, by causing him to be brought into court. Spencer, C. J., in delivering the opinion of the court, said, I consider it perfectly well settled that to justify an inferior magistrate in committing a person, he must have jurisdiction not only of the subject matter of the complaint, but also of the process and person of the defendant. If a court of limited jurisdiction issues a process which is illegal, and not merely erroneous ; or if a court, whether of limited jurisdiction or not, undertakes to hold cognizance of a cause, without having gained jurisdiction of the person, by having him before them in the manner required by law, the proceedings are void: and in the case of a limited or special jurisdiction, the magistrate attempting to enforce a proceeding founded on any judgment, sentence or conviction, in such a case, becomes a trespasser. The court held that it was no answer to the action that the plaintiff was summoned and might have appeared—it was the duty of the justice to cause him to be brought into court, and not having done

so the judgment was void. In the case now before the court it was the duty of the justice to cause the plaintiff to be brought before him; the process prescribed by the statute was a warrant, and the issuing of a summons was expressly forbidden. The service and return of a summons conferred no authority whatever upon the defendant, and his judgment was as utterly void as it would have been if he had never issued any process whatever. This was not only adjudged in the case of *Bigelow* v. *Stearns*, but it is a salutary principle, which should never be lost sight of in a government, professing to protect the persons and property of individuals, against the exercise of unregulated power. It is impossible upon any ground of principle to say, that the service of process, not only unauthorized but forbidden by law, could confer any jurisdiction on the justice over the person of the plaintiff.

In *Adkins* v. *Brewer & Harvey*, 3 Cowen, 206, trespass was maintained against the justice and the party who sued out the process. They attempted to justify under judgments and executions against the plaintiff, by virtue of which the property was taken and sold. The judgments were recovered in suits commenced by attachments, without proof that the defendant in those suits was concealed or had departed the county as the statute required; and on this ground it was held that the judgments were void, and afforded no protection to the justice nor to the person who sued out the process. In *Reynolds* v. *Orvis & Herrick*, 7 Cowen, 269, the defendants, who were justices of the peace, made an order and removed the plaintiff as a pauper, the plaintiff having first been brought before them and examined on a warrant, delivered to and executed by a constable of a different town from that prescribed by the statute. It was held, notwithstanding the plaintiff was actually brought into court and examined, that the justices acquired no jurisdiction, and that the order of removal was illegal and void, because the party had not been brought before the court in the form prescribed by law; and the justices were subjected to an action for false imprisonment. Woodworth, J., who delivered the opinion of the court, said, when a rule is laid

down for the government of inferior jurisdictions, we are not at liberty to inquire whether it can be safely departed from ; whether the mode pursued is equally beneficial to the party as that pointed out by the statute. The answer to arguments of this kind is, that the law has prescribed the manner in which the person of the pauper may be apprehended. This case goes the whole length of deciding the one under consideration. In *Colvin* v. *Luther*, 9 Cowen, 61, it was decided that a justice had no jurisdiction to render judgment, although a warrant had been duly issued against the defendant, and the officer had made a regular return on the process, for the reason that the defendant was not actually brought into court. The defendant, on being arrested, had requested the constable to appear for him and confess judgment, and yet it was held that the justice had no jurisdiction of the person of the defendant—not having acquired it in the form prescribed by the statute. The late chief justice, who delivered the opinion of the court, remarked, that where there is jurisdiction, but the magistrate proceeds erroneously, the remedy is by certiorari or writ of error ; but where there is no jurisdiction, all is absolutely void and all are trespassers. In *Bissell* v. *Gold & Sill*, 1 Wendell, 210, the defendant, who was a freeholder, was arrested on a warrant issued without oath, and it was held that the justice had no jurisdiction over the person of the defendant, and that all parties concerned in the arrest were trespassers. In *Lewis* v. *Palmer and others*, 6 Wendell, 367, it was held that a justice who issued a second execution after the first had been satisfied, was a trespasser, although he did it on the false representation of the plaintiff that the first execution was lost. The decision was put upon the ground that the justice had no jurisdiction. In *Savacool* v. *Boughton*, the whole subject was very fully and ably considered, and the court very carefully distinguish between the *ministerial officer* who executes process valid upon its face, and *the court* which issues and *the party who sues out* illegal process.' One of the concluding propositions of Marcy, J. who delivered the opinion of the court, was, " that where an inferior court has not jurisdiction of the subject matter, or having it, has

not jurisdiction of the person of the defendant, all its proceedings are absolutely void; neither the *members of the court* nor the *plaintiff*, (if he procured or assented to the proceedings,) can derive any protection from them, when prosecuted by the party aggrieved thereby." This is in accordance with the whole course of legal adjudication on the question; and I think it safe to affirm that there has been no decision to the contrary, either in England or this state, within the last century, unless the case of *Rogers* v. *Mulliner* is to be regarded as forming an exception.

It was said in the case of *Rogers* v. *Mulliner*, that "in issuing process at the request of the party, a justice acts ministerially, and is justified in issuing any process within his jurisdiction which is demanded by the party, provided the justice acts in good faith. Should he knowingly issue a warrant against the provisions of the statute, he would be amenable in an action." To this doctrine I cannot yield my assent for several reasons. It is not supported by any legal adjudication that has fallen under my notice; but is, I think, against the whole current of authority. It opens a door to the intolerable abuse of power. The plaintiff is not liable for irregular process, unless he requested the justice to issue it. *Taylor* v. *Trask*, 7 Cowen, 249. If the justice is not liable for his illegal acts without proving that he acted in bad faith, or knew that he was proceeding contrary to law, the party who has been deprived of his liberty or his goods may never be able to ascertain the person against whom he is to seek redress. If he prosecute the plaintiff, he must prove that the plaintiff ordered the process—if he sue the justice, it is at the peril of being defeated if the justice was requested to issue the illegal process, and acted in good faith. A shield is thus provided for those who exercise power, without any adequate protection to those who may suffer injury. Such a doctrine cannot fail to lead to injustice and oppression.

There can be very little occasion for a magistrate to mistake in the issuing of process, if he will exercise proper diligence in seeking information. Still hard cases will sometimes happen, and the justice will occasionally suffer when

he has acted in good faith; but this is a much smaller evil than that of putting men out of the protection of the law. It is said that the justice may be excused because he acts *ministerially* in the issuing of process. With great respect I think that is one ground why justices cannot be excused if they issue process contrary to law. They are protected, not when acting *ministerially*, but when they act as *judges*, and on the principle that no magistrate is answerable for an error in judgment upon a matter within his cognizance. *Miller* v. *Seare*, 2 W. Black. 1145. *Briggs* v. *Wardwell*, 10 Mass. R. 356. The reason why the ministerial officer who executes process valid upon its face is protected, is because he is bound to act, and has no means of knowing what latent defect there may be in the proceedings. In *Moravia* v. *Sloper*, Willes 34, Lord Chief Justice Willes said, the inferior officer is punishable as a minister of the court if he do not obey its commands; and it would be unjust that a man should be punished if he does not do a thing, and should be liable to an action if he does. See also Vin. Abr. Trespass, C. a. pl. 17, note. But the justice is not bound to act until he has ascertained what process it is proper to issue. It is his duty to inquire, and he ought to be held responsible for the illegal command which he may give to the ministerial officer who is bound to execute his mandates.

I shall only refer to a few other cases in support of the position that a justice of the peace who exceeds his authority, or acts without jurisdiction, is liable as a trespasser. *Grumon* v. *Raymond*, 1 Conn. R. 40. *Tracy* v. *Williams*, 4 id. 107. *The State* v. *Leach*, 7 id. 452. *Hall* v. *Howel*, 10 id. 520. *Briggs* v. *Wardwell*, 10 Mass. R. 356. *Elliott* v. *Piersol*, 1 Peters, 340.

There is not a more wise and salutary principle in the law, than that which requires courts and officers of special and limited jurisdiction to observe, at their peril, the boundaries of power. It was well remarked by Platt, J., in *Suydam* v. *Keys*, that " experience has shown that the safety of private rights will not admit of a relaxation of this rule; and the uniform current of *English* [he might have added and *American*] authorities have supported it with jealous caution.

ALBANY,
Oct. 1836.

Camp
v.
Bennett.

The principle is sometimes harsh in its application; but in order to be efficacious and certain, it is necessary that it should be uniform. Lawless power is never so dangerous as when exerted by public officers, according to the forms of law. The remedy for such abuses ought to be direct and ample."

Whether this case is considered upon principle or authority, I entertain no doubt that the defendant is liable as a trespasser, unless by amending his plea he can show affirmatively that he acquired jurisdiction over the person of the plaintiff.

Judgment for defendant.