PHILADELPHIA & R. R. CO. (CAMBLOS v.). See Case No. 2,331. .

PHILADELPHIA & R. R. CO. (DINSMORE v.). See Case No. 3,921.

PHILADELPHIA & R. R. CO. (JEHNER v.). See Case No. 7,255.

PHILADELPHIA & R. R. CO. v. The J. H. GAUTIER. See Case No. 7,319.

---

## Case No. 11,088.

PHILADELPHIA & R. R. CO. v. KENNEY.

[30 Leg. Int. 281; 9 Phila. 403; 5 Leg. Op. 137; 18 Int. Rev. Rec. 92.]

Circuit Court, E. D. Pennsylvania.   Aug. 21, 1873.[1]

INCOME TAX—CORPORATION DIVIDENDS.

· Dividends declared and payable by railroad companies during the last five months of 1870, are not liable to taxation by the United States. A seizure by collector of United States revenue is illegal.

[Cited in Metropolitan R. Co. v. Slack, Case No. 9,506.]

At law.

McKENNAN, Circuit Judge. This is an action of trespass vi et armis for the alleged illegal seizure and detention of the goods and chattels of the plaintiff, mentioned in the declaration. The defendant alleges in his plea that he was justified in making this seizure, because, he says, the plaintiff, on the last day of November, 1870, declared a dividend of $1,570,580.01, on its capital stock, as part of its earnings, income and gains, made and accrued between the 1st day of July, 1870, and the 30th day of November, 1870, which was made payable to its stockholders on the 27th day of December, 1870; that the plaintiff thereby became liable to pay to the United States, a tax of 2½ per cent. on this dividend, amounting to $33,469.75, which was duly entered by the assessor of internal revenue upon the list made out by him according to law, a certified copy of which he furnished the defendant as collector; and that upon the default of the plaintiff, in performance of the duty imposed upon him by law, he made the seizure complained of. To this plea the plaintiff has demurred generally.

Assuming that the authority under which the defendant acted is sufficiently set out in the plea, two questions are presented by the demurrer, upon which the decision of the cause depends. First. Is the action of trespass an appropriate remedy for the alleged wrong? Second. Was the tax imposed upon the plaintiff authorized by law?

[1] [Reversed in 154 U. S. 616.]

An executive or ministerial officer, who acts under the authority of a tribunal of general jurisdiction, is not responsible for an excessive or illegal exercise of its powers, but where a special or limited jurisdiction only is possessed, such officer is bound to see that he acts within the scope of the legal powers of the tribunal which commands him. This is the rule in England, by which the accountability of ministerial officers is determined. Thus in the Case of Marshalsea, 10 Coke, 76, Sir Edward Coke says: "If the court of common pleas, in a plea of debt, doth award a capias against a duke, earl, &c., which, by the law, doth not lie against them, and the same appeareth in the writ itself, yet, if the sheriff arrest them by force of the capias, although that the writ be against law, notwithstanding, inasmuch as the court hath jurisdiction of the cause, the sheriff is excused." And so the law has ever since been held by the English courts. But in the United States the scope of the rule has been extended, so that it is applied broadly to the protection of ministerial officers, who execute the mandates of legally constituted tribunals of every rank or character, having either a general or special jurisdiction of the subject matter to which the process relates. Beach v. Furman, 9 Johns. 230, is a conspicuous illustration of this. It was an action of trespass against a constable for seizing and selling the property of a woman under a warrant commanding him to levy of her goods and chattels, a penalty imposed by law for refusal to work on the highways, from which duty women were expressly exempted. The court, Kent, C. J., says: "Now, the overseer of the highways was the person to designate, in the first instance, and to deliver to the commissioners the names of the persons liable to be assessed, and he was also the officer to adjudge what persons were in default, and to demand the warrant. In the exercise of this authority the overseer may have returned the names of persons not liable to assessment, and he may have adjudged persons in default who were not in default. * * * It would be against the obvious principles of justice and policy to make the ministerial officers act, in a case like this, at their peril, when they have no right to judge and are required to act. They are only responsible as trespassers when they act under the authority of a person who had no jurisdiction in the case, or when they exercise that authority irregularly." In Savacool v. Boughton, 5 Wend. 170, Mr. Justice Marcy discusses the subject fully, and shows that the doctrine of Beach v. Furman is in harmony with the leading American cases and with the principles of justice and reason.

The same rule is settled as the law of Pennsylvania by the repeated decisions of its supreme court. Moore v. Alleghany City, 6 Har. [18 Pa.] 55; Cunningham v. Mitchel, 67 Pa. St. 81. In the last of these cases, Mr. Justice Agnew says: "In the case of public

officers, an inferior acting within the scope of his warrant, when apparently regular, is always protected, unless the authority issuing it was without jurisdiction. It has been a question how far this authority extends, when the superior authority acts irregularly and illegally. But now the doctrine appears to be settled, as it should be, that even in such case the inferior has to look only to his warrant." Although there is an apparent inconsistency in the cases arising from the application rather than the statement of the rule, as in Thurston v. Martin [Case No. 14,-018], and others, the discussion must be considered as ended by the recent judgments of the supreme court of the United States, in accordance with the doctrine of the cases above referred to. "It is well settled now," say the court, in Erskine v. Hohnback, 14 Wall. [81 U. S.] 616, "that if the officer or tribunal possess jurisdiction over the subject matter upon which judgment is passed, with power to issue an order or process for the enforcement of such judgment, and the order or process issued thereon to the ministerial officer is regular on its face, showing no departure from the law or defect of jurisdiction over the person or property affected, then, and in such cases, the order or process will give full and entire protection to the ministerial officer in its regular enforcement against any prosecution which the party aggrieved thereby may institute against him, although serious errors may have been committed by the officer or tribunal in reaching the conclusion or judgment upon which the order or process is issued." This was reaffirmed in Hafin v. Mason [15 Wall. (82 U. S.) 671], and it was held that the duties of a collector of internal revenue in the enforcement of a tax are purely ministerial, and that the assessment certified to him is his authority to proceed, and, like an execution to a sheriff, regular on its face, issued by a tribunal having jurisdiction of the subject matter, constitutes his protection. The rule by which the liability of ministerial officers is to be determined is thus clearly defined, and firmly established. They are not accountable for the erroneous judgment of the tribunal, whose mandate they are to enforce, or even for an excessive or illegal exercise of its powers. Where they are bound to act they are responsible only for their own errors. But the protection afforded them is not without limit or qualification. It is an essential condition that the tribunal, whose order is executed, should have jurisdiction of the subject matter of its judgment. This is distinctly held in all the cases. If payment of a tax is enforced, there must be legal authority to impose it, and this the executive officer must see to at his peril.

The distinction between the said assumption of power to impose a tax, where a ministerial officer will not be protected, and an illegal exercise of it, where he will, is well illustrated in Moore v. Alleghany City, su-

pra. "Were the authorities of Alleghany destitute of the power to levy taxes, or limited to the assessment of persons only, an attempt, in the first case, to assess and collect the tax, and, in the second, to extend the assessment to property, might be deemed so utterly nugatory as to afford its officer no protection. But possessing the right to levy and collect a tax for city purposes from persons and property, a mistake of the class of persons, or the species of property subject to it, will not amount to usurpation." The decisive inquiry, then, in this case, is, was the imposition of the tax collected from the plaintiff authorized by law? If it was, the assessment by the assessor and the list certified and delivered by him to the defendant, as collector, constituted a complete justification of the alleged trespass. If it was not, the defendant is not protected by the process under which he acted.

By the 122d section of the act of congress of June 30th, 1864 (15 Stat. 284), a duty of five per cent. was imposed upon interest on bonds issued, on dividends declared, and on undistributed profits earned by railroad and other corporations, which duty the officers of said corporations were required to return to the assessor and pay to the commissioner within thirty days after said interest and dividends became due and payable, and they were authorized to retain the duty so paid out of the interest and dividends due to bond and stockholders. This is the only act, prior to July, 1870, which imposed a tax on interest and dividends payable by railroad companies. On the 14th of July, 1870, an act was passed by congress (16 Stat. 261) the 17th section of which repeals the 122d and other sections of the act of 1864, by providing that, after the 1st day of August, 1870, no further taxes shall be levied or assessed under them. It is plain, therefore, that the tax described in the plea could not be assessed and collected under the act of 1864, and that, unless it was authorized by the act of 1870, there is no warrant anywhere for its assessment. The 15th section of the latter act is the only part of it for which this effect can be claimed, and it enacts: "That there shall be levied and collected for and during the year 1871, a tax of two and one-half per centum on the amount of all interest or coupons paid on bonds or other evidences of the debt issued and payable in one or more years after date by any of the corporations in this section hereinafter enumerated, and on the amount of all dividends, earnings, income or gains hereafter declared by any bank * * * railroad company, &c., * * * whenever and wherever the same shall be payable * * * and on all undivided profits of any such corporation which have accrued and been earned and added to any surplus, contingent or other fund, and every such corporation having paid the tax aforesaid is hereby authorized to deduct and withhold from any payment on account of in-

terest, coupons and dividends an amount equal to tax of two and one-half per centum on the same."

The word "levied" in the beginning of the section, is evidently employed as convertible with assessed or imposed, so that the import of the enactment· is, that interest, dividends, and surplus earnings shall be subjected to a tax of two and one-half per cent. for and during the year 1871. The plainly expressed meaning of the section would, therefore, seem to be, that the tax to be levied was a tax for the year 1871, and not for the whole or any part of any previous year, and that it was to be imposed upon the enumerated subjects during and within the year 1871, and not during or within any other year. Interpreting the words of the section then, according to their ordinary sense, interest falling due, and dividends declared and payable within the last five months of 1870, were excluded from the operation of the tax.

But it is urged that the phrase "hereafter declared," applied to dividends, subject to the tax, dividends declared and payable before 1871. There is certainly no ground, either in the import of these words or in their collocation in the law, for extending their qualifying effect to interest or undivided profits. Only dividends are properly spoken of as declared; not so either interest or undivided earnings, and to apply the term to them would be both inappropriate and unmeaning. It must be taken as referring exclusively to dividends, and interest and undivided earnings must be considered as affected by the unqualified import of the clause which makes them taxable for and during the year 1871. Nor is there any better reason for interpreting this phrase to describe only dividends declared after August 1st, 1870. It is not found in the ·same section with that date, and while, ex vi termini, it applies to the date of the passage of the act, this obvious reference cannot be changed by the exigencies of a mere arbitrary construction. But were these words used in any other sense than· as referring to a period occurring after the passage of the act, and for and during the year 1871, as they naturally import, and not with intent to impose a tax upon dividends exceptionally? To preserve the congruity of legislative action, and to harmonise the several sections of the act of 1870 itself, they must be thus interpreted. From the origin of the system of internal revenue taxation, through the whole course of legislation on the subject, interest on corporate indebtedness, dividends of profits and undivided earnings were treated as closely related if not inseparable subjects of taxation. They were associated in the same section, the same tax was imposed upon them, and the same mode provided for its return and collection; and this relation was preserved in their relief together from the five per cent. tax, by the repeal of the 122d section of the

act of 1864. They are indeed but a single subject, because they are the product of the inseparable exercise of corporate franchises, and are only nominally distinguishable by being set apart for different classes of recipients. They were therefore uniformly dealt with as cognate subjects of taxation. Now to hold that dividends were intended to be taxed, and that interest and undivided profits were not, ought to be the result of an unequivocal declaration of congress to that effect. Aside from this there is no reason for such a conclusion by construction. But if anything in the act is plain, it is that the tax upon interest and undivided profits was limited in its operation to the 1st of August, 1870, and that the new tax was not to be imposed upon them during the remainder of that year or until the year 1871. Now the same limitation is expressly applicable to the taxation of dividends, and the new tax to be levied upon them is also declared to be for the year 1871. A discriminating construction by which they would be subjected to the new tax before 1871, would then not only disregard the analogies of former legislation, but it would necessarily characterise a tax, expressly declared to be "for and during the year 1871," as a tax for and during five months of the year 1870.

The 16th section of the act of 1870, directs the mode and time of making· a return of the income and.profits subject to taxation under the 15th section. It requires a return to be made to the assessor of the district or his assistant "of the amount of income and profits and taxes as aforesaid * * * on or before the tenth day of the month following that in which any dividends or sums of money became due or payable as aforesaid," and the act of July 13th, 1866, § 11 [14 Stat. 150], requires the payment of the tax on or before the last day of the month. Under these provisions it is the obvious duty of corporations to return the dividends and sums of money due by them, and to pay the tax to which they are liable within the periods designated. If they are not bound to do so, it can only be for the reason that the dividends declared and the sums due by them are not subject to taxation. Now the tax imposed by the 15th section was not to be "levied or collected" until the year 1871. If no tax was to be levied or demandable until the year 1871, it is plain that the provisions in relation to the return and payment of the tax imposed are inapplicable to dividends declared and payable in 1870; and if no provision is made for the return and assessment of dividends then declared, as in other cases, is not the conclusion irresistible that they were not intended to be placed in the category of subjects upon which a tax was imposed? Whatever signification, then, the words "hereafter declared," as applied to dividends, may have, they cannot be interpreted to subject dividends to a discriminating tax, against the uniform course of pre-

vious legislation and the clear meaning of the preceding words, which limit the tax imposed to the year 1871, and to subjects properly classified as belonging to that period. Even if they can be regarded as casting doubt upon the meaning of the law, that doubt must be resolved in favor of the citizen. The exercise of the power of taxation is not to be affirmed upon conjectural or arbitrary inferences. No burden is to be taken as imposed upon the citizen which the government has not clearly made it his duty to assume. Nor can any portion of his property be exacted for any purpose, except in pursuance of an unambiguous mandate.

Whatever degree of liberality, therefore, may be allowable in the construction of statutes relating to the revenue of the government, there is neither reason nor justice in expanding them, by a strain upon the ordinary import of their words, to give effect to a hypothetical legislative intention. It results, then, that dividends declared and payable by railroad companies during the last five months of 1870, were not subject to taxation; that the tax described in the plea was assessed without authority of law, and that the seizure of the plaintiff's property was without justification. Judgment upon the demurrer must therefore be entered for the plaintiff.

[The judgment of this court was reversed by the supreme court, where it was carried on writ of error. 154 U. S. 616, 14 Sup. Ct. 1196.]