## EARL *vs.* CAMP & STONE.

A *ministerial officer* is protected in the execution of process, issued by a court or officer having jurisdiction of the subject matter, and of the process, if it be regular on its face and does not disclose a want of jurisdiction. This rule of law, however, is one of *protection* merely, and beyond that confers no right; it is personal to the officer himself, and affords no shelter to the wrong-doer, under color of whose process, if it be void, the officer is called upon to act.

A purchaser under an execution, whether he be the plaintiff in the process or an innocent third person, to maintain an action of *trover* for the property bought, is bound to prove not only the sale and execution, but a *valid judgment*.

So also it is incumbent upon the officer, in an action of *trespass*, to show a valid judgment, where the suit is in his name, for property levied upon by him by virtue of process, but for the benefit of the plaintiff in the process.

A ministerial officer, *it seems*, may stop in the execution of process, regular on its face, whenever he becomes satisfied that there is a want of jurisdiction in the court or officer issuing the same; and if sued for neglect of duty, may show in his defence such want of jurisdiction.

The right of an officer to bring an action for goods levied upon by him, depends upon his special property and *liability over;* if the process be *void*, he cannot maintain an action for the taking of the goods.

And although in general, in such action in a suit against a stranger for the taking of goods, it is sufficient to show an execution, or process, levy and

possession under it, still if the defendant can show the proceedings on the part of the plaintiff in the process *void*, the plaintiff cannot sustain his suit.

The *consent* of the officer to the taking of the property is a bar to an action in his own name.

In an action of trespass, by an officer, it is not admissible for a defendant to show that the property, previous to the levy, was subject to a *mortgage*, or belonged to a third person, unless he connects himself with the outstanding title.

Nor can he show that the property taken was *exempt* from execution or attachment; no one but the defendant in the process under which the levy was made, can avail himself of such fact.

ALBANY,
Jan. 1837.

Earl
v.
Camp.

THIS was an action of *trespass*, tried at the Tompkins circuit in June, 1834, before the Hon. ROBERT MONELL, one of the circuit judges.

The plaintiff, as a *constable*, on the 23d *March*, 1833, levied upon certain goods and chattels as the property of one *Thomas Post*, by virtue of an *attachment* issued by a justice of the peace against Post, as having departed the county with the intent to defraud his creditors or to avoid the service of civil process, at the suit of *Timothy Burr* and *William Burr;* and on the same day he also levied upon the same property by virtue of three other attachments against *Post;* two in favor of F. S. Dumont & J. Kellogg, and one in favor of L. Riggs & W. C. Goddard. The principal part of the property was taken from the possession of the defendants, who had obtained possession thereof under an *attachment* in their favor. The attachments were produced, with returns endorsed thereon in the hand writing of the plaintiff, stating that he had levied upon the property and taken it into his custody and possession. The attachments were all returnable on the 29th March, on which day judgments were rendered in favor of Dumont & Kellogg for $77,88, and in favor of Riggs & Goddard for $52,44. The plaintiff then proved, that in *June*, 1834, the property levied upon under the attachments in favor of Dumont & Kellogg and Riggs & Goddard, was taken by *D. Farrington*, a constable, by virtue of an execution in favor of the defendants, and by their direction, and sold at public vendue, the value of which was stated to be $167. On the part of the defendants it was shown, that they also, on the 23d March, sued out an *attachment* against *Post*, which was levied upon the

property taken under the execution, and that on the 29th March a judgment was rendered in their favor, in the suit thus commenced, for $100 and costs; that an execution was issued upon such judgment and placed in the hands of *Farrington*, who called upon *Earl* for the horse, saddle and bridle taken from the possession of the defendants. Earl told him he might take the property, if *Timothy Burr* would consent to it. Burr gave his consent, and possession was taken of the property by Farrington. The plaintiff now proved that the *attachment* in favor of the defendants was not served by a constable, *but by one of the defendants*, who was *deputed* by the justice to perform such service. The circuit judge thereupon ruled that the attachment having been thus served, the justice had no jurisdiction of the subject matter, and had no right to render judgment in favor of the defendants, who consequently could not justify under the attachment or execution in their favor. The defendants then produced in evidence the affidavits on which the attachments in favor of Dumont & Kellogg and Riggs & Goddard had issued, by which it appeared that the plaintiffs had only stated their *belief* that Post had departed, &c. with intent to defraud, &c. without setting forth any facts or circumstances to enable the justice, to whom application was made for process, to judge of the propriety of issuing the same, and objected that the proceedings were void. They also proved that the applications for the attachments were not in writing. The circuit judge ruled that the affidavits were sufficient, and that it was not necessary that an application for an attachment should be in writing. The same objection as to the sufficiency of the affidavit and application existed against the proceeding on the part of the defendants. The defendants then offered to prove, that on the 15th March, 1833, *Post*, the debtor, executed a *mortgage* of the property in question to Henry King and others, to whom he was justly indebted, to secure the payment of $152,50, in three months from its date: which evidence was objected to by the plaintiff and rejected by the judge. They did not offer to prove that they had interest in the mortgage. They also offered to prove that a portion of the

property sold under the execution consisted of household furniture which was exempt from execution, and that another portion of it did not belong to Post, but to a third person. The judge ruled that the evidence was inadmissible, and charged the jury that the plaintiff, having levied upon the property by virtue of the attachments, was responsible for it, and entitled to recover its value; that in relation to the *release* of the horse, saddle and bridle, the plaintiff was merely the agent of the parties, who could not be prejudiced by his acts; and although *Burr*, the plaintiff in one of the attachments, consented to the taking of the property under the defendant's execution, such consent did not affect the rights of Dumont & Kellogg and Riggs & Goddard. The jury found a verdict in favor of the plaintiff for $144, which the defendants now move to set aside.

*A. Taber*, for the defendant.

*M. T. Reynolds*, for the plaintiff.

*By the Court*, COWEN, J. The attachments and executions under which the parties claim are but a series of nullities, 2 R. S. 162, § 27, 28; id. 273, § 271; Act of April 26, 1831, to abolish imprisonment, § 35; *Smith* v. *Luce*, 14 Wendell, 237; 2 R. S. 202, § 294, 2d ed.; Sess. Laws, 1831, p. 404, § 35; *Adkins* v. *Brewer*, 3 Cowen, 206, 208, 9, and the cases there cited; and neither they nor any levy under them created any right of action in favor of the plaintiff, nor defence for the other side. No actual possession taken by the plaintiff, independent of the attachments, was shown or relied on by him. He seems to have rested his title on his own return upon void process. If there were any actual possession in either party, it was rather on the side of the defendants, who are found not merely making a formal levy, but following it out by a sale; and that, too, in case of the horse by the actual consent of the plaintiff himself. In respect to this article at least, there seems to be any thing but a *trespass*.

It is insisted that the plaintiff, being a ministerial officer, should be protected by his process, which was fair on its face, though the magistrate wanted jurisdiction; and so, indeed, he should within the case of *Savacool* v. *Boughton*, 5 Wendell, 170, and various other cases decided by this court. *M'Guinty* v. *Herrick*, 5 Wendell, 240, 243. *Wilcox* v. *Smith*, id. 231. *Reynolds* v. *Moore*, 9 id. 35, 37, per Sutherland, J. *Alexander* v. *Hoyt*, 7 id. 89. *Coon* v. *Congden*, 12 id. 496, 499. *Rogers* v. *Mulliner*, 6 id. 597. These cases go the utmost length, and the true length in the protection of ministerial officers. The law imposes various duties upon them on delivering to them the process of the superior or inferior courts or the warrants of officers, to the discharge of which they are absolutely bound provided there is jurisdiction; and though there be a total want of such jurisdiction, if it be not apparent on the face of the process, the law will not put them to inquire and judge of the case. In general they ought not to look beyond the process, and in no case need they do so. The duty is usually to arrest the person, or take the goods of another, the latter of which is to be followed by a sale. *Savacool* v. *Boughton* was an arrest of the person; and many cases of the kind are cited by Mr. Justice Marcy, in delivering the opinion of the court. *Alexander* v. *Hoyt, Reynolds* v. *Moore*, and *Coon* v. *Congden* are cases of goods seized and sold. Our later cases are full and pointed upon the want of jurisdiction in respect to subject matter; and the principle upon which they go is equally applicable to a want of jurisdiction over the person. Accordingly the collector of a militia fine was protected, though the delinquent was exempt from military duty. *Fox* v. *Wood*, 1 Rawle, 143. Indeed, I take it that wherever there is jurisdiction of the process, the law means to make the officer safe in yielding implicit obedience. Even the justice who issued his warrant against a resident freeholder, without previous summons or oath, was, in *Rogers* v. *Mulliner*, 6 Wendell, 597, protected within this principle.

But the rule is one of *protection* merely; and beyond that is not meant to confer any right. The armor which

it furnishes, is strictly defensive. It is personal to the officer himself; and cannot be used to confer any right upon the wrongdoers under color of whose void proceedings he is called upon to act. Suppose he goes on and makes sale of the property levied upon; even the innocent purchaser takes no right. To perfect his title, he must show a valid judgment; a solid foundation for the process. This is emphatically so of the party who instituted the proceedings. Suppose this plaintiff, Earl, had sold to the plaintiffs in these attachments, under the executions which followed; to make a title in trover, they must have gone back to the jurisdictional question, and maintained their rights by proceedings conformable to the statute. Their judgment would be a part of their title. This very point was held in *Yates* v. *St. John,* 12 Wendell, 74. The present action is but an attempt to do the same thing in another form. Instead of going on to a sale, they sue in the name of the constable, for the value of goods which have been taken, after their officer, as they say, had acquired a lien by their process. They are the real parties; and so they were treated at the trial. The constable was not allowed even to consent that any of their property should be taken by the defendant's officer, because the interest of the former was merely nominal, a naked trust, or, as it was called in the charge, an agency for their benefit. Surely, it is not necessary to go the length here contended, on the principle of protection to the officer. He is not to be sustained and protected in whatever actions he may bring. In no case where he becomes satisfied that there is a want of jurisdiction, is he bound to act in any way. He has a discretion, if he choose to exercise it; and if he refuses in the first instance, the party cannot make him accountable. In *Albee* v. *Ward,* 8 Mass. R. 79, the officer had made an arrest and suffered an escape upon a justice's execution, whereby the plaintiff lost his debt. In an action for the escape, though the execution was fair on its face, and imported jurisdiction, yet the officer was allowed to protect himself by showing that it was issued without authority. Yet the court allowed that it furnished a complete protection against an action of trespass. This is but

following out the long settled distinction laid down by Hale, C. J. in *Anon.* 1 Ventr. 259; and which was adjudged in *Squibb* v. *Hole*, 2 Mod. 29, 1 Freem. 129, S. C.   The same distinction is laid down *obiter*, by Parsons, C. J. in *Dillingham* v. *Snow*, 5 Mass. R. 558, with respect to a collector of taxes ; and *Hill* v. *Wait*, 5 Verm. R. 124, was the common case.   A justice rendered judgment in a matter beyond his jurisdiction, and issued an execution valid on its face.   The officer neglected to proceed under it, and was sued for the neglect.   The court said the execution being legal upon the face of it, would have justified the officer had he levied and collected the amount ; and yet the plaintiff cannot recover of him on a charge of neglect in not collecting and paying the amount over ; for in this, as well as in other cases, to make an officer liable for neglecting to collect an execution, the plaintiff must show a judgment that is not void.   Not being liable over, it follows that the officer cannot maintain an action for the goods.   To warrant this, he must have a special property, as all the cases from *Wilbraham* v. *Snow*, 2 Saund. 47, agree.   *Clerk* v. *Withers*, 6 Mod. 298, per Gould, J.   2 Williams' Saund. 47, *a*, note 1, and the cases there cited.   All hold that the action goes on a special property acquired, and liability over.   Watson's office of Sheriff, 190, 191, and the cases there cited.   The property acquired, is not for his own benefit, but for that of the party for whom he acts.   It is not necessary to his protection under void process, that we should hold he has such property as will give him an action ; or indeed, that he has any property. It saves him from all hardship to say that he shall stand protected against all actions for doing whatever the process commands him.   It does not require him to bring actions. Beside, before doing this, he has time to investigate, to take advice, to judge, and after all, if it be a case of doubt, to demand indemnity.   Indeed, it is understood that this kind of action generally goes forward under a promise of indemnity express or implied, from the party who wishes to try the right.   It is, for every substantial purpose, his action ; and if it be obvious that he has no right, it necessarily follows that the officer has none.   The latter comes *en autre*

*droit*, and must stand or fall upon the claim of his principal, per Spencer, J. in *Hotchkiss* v. *M'Vickar*, 12 Johns. R. 403, 408. It is not logical in any sense for him to say, "I am privileged in any act of force which I do suddenly according to the command of my writ. The law will protect me in obeying the process which it has authorized another to create; therefore, I acquire a property; nay, another, a wrong doer, shall take an interest or property, in virtue of that act." Who is to take the money recovered by this verdict? Not the plaintiffs in the attachments; for their proceedings are void; and if paid, it must remain a God-send to the officer. Suppose him estopped as recovering in right of the plaintiffs, and hence liable to pay over the money; what kind of justice is it, which takes the value from these defendants, and still leaves them liable to pay the same value again to Post, when he shall come upon them for the tortious act? Dealing with them as this plaintiff asks we should, no chance is left them for claiming a transmutation of property, though they should be put to pay the full value.

I am aware, all this time, that the case might have been differed, by showing an actual prior possession in the plaintiff; and it is insisted that his own return, stating that he had attached the goods and taken them into his custody and possession, made out such a case. That was *prima facie* evidence of a levy, according to *Cornell* v. *Cook*, 7 Cowen's R. 313, and *Spoor* v. *Holland*, 8 Wendell, 445. The language of the return may be satisfied by the legal or actual custody and possession. Which it was, the return does not show. But admitting that it was sufficient to prove the actual possession as against these defendants, who were strangers, their judgment being void, the plaintiff then made out a *prima facie* case, according to *Spoor* v. *Holland* and the previous cases of *Barker* v. *Knapp*, 6 Johns. R. 195, and *Blakeley* v. *Sheldon*, 7 id. 32, 33. These cases hold that, as against a stranger who takes the goods, the execution levied and possession taken, without showing the judgment, will maintain the action. But when we go farther

and see, as here, that in truth there is neither process nor judgment, with what propriety can it then be said that the return is to be evidence of any thing? That loses all its force with the other proceedings; and if the plaintiff would still claim as a prior possessor against an officious stranger, he should show his possession by something better than a void return upon void process.

I am clear the plaintiff had no legal rights upon which he could maintain an action against any body. But if he had valid process, what were his rights? We have seen upon authority that he was a special property-man. Holding such a property, he gave up the horse to the defendants voluntarily, and yet was allowed to recover the value thereof, as taken by an act of trespass. It was held in *Marshall* v. *Davis*, 1 Wendell, 109, that trespass would not lie by the general owner whose property was taken with the consent of the bailee. That, too, was the case of a bailment with the right to resume possession whenever the bailor pleased. Here was, as yet, *no legal right whatever in the plaintiffs* in the attachments, even if we admit them to have been valid. Earl, the present plaintiff, was the bailee, and Post the general owner. Gould, J. in *Clerk* v. *Withers*, 6 Mod. 298, speaking of *Wilbraham* v. *Snow*, remarks, "Kelynge, C. J., held that he [the sheriff who levies a *fi. fa.*] gains a general property; but all the rest say it was a special property so as to sell, &c." It is scarcely necessary to observe, that if the assent of the bailee will protect the taker against trespass by the general owner, it is fatal to such an action brought in his own name. See per Woodworth, J. in *Daniels* v. *Ball*, 11 Wendell, 57; S. P. note. If he was a mere agent or servant, as the learned judge held him to be at the trial, while I agree that in such case his consent without a special authority for the purpose, would not prevent trespass by his principal, yet I cannot see, even in such case, why it should not conclude the agent or servant himself against an action of trespass or any other action. It was a voluntary relinquishment of all *his* rights at least, with a full knowledge that the defendants intended to appropriate the property to their own use. I think it a much stronger case than

*Clarke* v. *Clarke*, 6 Esq. R. 61, where it was held that not even trover would lie after an implied assent.

It is not necessary to pass upon the questions whether the goods being under a previous mortgage by Post, and some of the articles being exempt from the attachments, were facts receivable in mitigation of damages. I will only remark, that this right to show property in a third person, by way of defeating the action of a naked possessor, was thought to be peculiar to a defence in *trover*, till *Duncan* v. *Spear*, 11 Wendell, 54; and see *Daniels* v. *Ball*, id. 57, note. By these cases it was denied even in trover, though agreed to be admissible if the defendant would connect himself with the outstanding title. In *Spoor* v. *Holland*, 8 Wendell, 445, to which we have been referred, the defendant was allowed to do the same thing in mitigation of damages. The cases do not go farther than this even in trover; and the defendant in trespass was always holden to equal if not greater strictness. The defendants, to bring themselves within the latter case, should have proved that they were the assignees of the mortgage, or had a claim under it in some other way.

The cases cited seem equally an answer to the objection that a part of the property seized was exempt from execution. The right of the debtor in this case is to be regarded as that of a third person; for even though the property be sold and applied to the execution against him, he may yet prosecute his action and recover the full value. *Hill* v. *Loomis*, 6 N. Hamp. R. 263. But it lies with him alone to make the objection, and seek his remedy in his own time and his own way. Even his bailee could not sue or defend himself on that ground. The right to enforce the exemption is personal to himself. All this was held in *Mickles* v. *Tousley*, 1 Cowen, 114.

Upon the two questions as to the damages, it appears to me the judge was clearly right; but having, as we think, erred upon the questions of title, there must be a new trial, the costs to abide the event.