## The Inhabitants of STURBRIDGE *versus* JONATHAN WINSLOW.

In an action by the town of S to recover a penalty for bringing into and leaving in the town a poor and indigent female, she not being lawfully settled therein, with intent to charge the town with her support, the defendant justified under an order from the overseers of the poor of the town of C, reciting that her lawful settlement was in S, and that she was actually on expense to C, and directing him, as constable, to remove her to S. It was *held*, that it was not necessary that the order should recite such acts and proceedings on the part of the overseers as would warrant them in issuing the order, and that the defendant was not bound to go behind the order and show that the overseers had complied with the requisitions of the law.

It *seems*, that an action for the penalty in such a case, should be brought in the name of the Commonwealth.

THIS was an action of debt to recover a penalty, under Revised Stat *c.* 46, § 24, which enacts, that " if any person shall bring into and leave any poor and indigent person in any town of this State, wherein such pauper is not lawfully settled, knowing him to be poor and indigent, and with intent to charge such town with his support, he shall forfeit a sum not exceeding one hundred dollars for any such offence."

At the trial, before *Putnam* J., it was proved that the defendant, on May 15, 1837, carried one Harriet White, a pauper, from the town of Charlton and left her at the poor house in Sturbridge. It was admitted that she was poor and in need of relief. No evidence was offered to show that her settlement was in Sturbridge.

The defendant proved that, being constable of Charlton, he conveyed the pauper to Sturbridge under a written order, signed by the overseers of the poor of Charlton, and dated May 15, 1837, as follows : " To Jonathan Winslow, constable &c. Whereas Harriet White, a pauper, whose lawful settlement is in the town of Sturbridge, in said county, is now actually on expense and chargeable to this town, you are therefore hereby directed, in conformity to the law in such case made and provided, forthwith to remove said Harriet White to the said town of Sturbridge."

The plaintiffs objected to the introduction of this order, because it was not competent for the defendant to show by

parol, that the overseers of Charlton had complied with al the requirements of the statute necessary to authorize them to issue the order, as the order contained no recital of such proceedings. The defendant contended that inasmuch as he was a stranger to the acts of the overseers, he was under no obligation to go behind the order ; that it was to be presumed, in his favor, that the overseers had done all that the law required, to authorize the issuing of the order ; and that the fact, that he thus removed the pauper under the order, was a defence to the action.

The plaintiffs further objected, that as the order did not on its face state that the requirements of the statute had been complied with before it was issued, if it was competent at all, it could not be received in evidence without first showing that fact ; and the judge ruled accordingly, in order that all the facts might be presented to the Court. Evidence was then introduced upon this point by each party.

A nonsuit or a default was to be entered, according as the Court should determine the law.

*Oct. 5th.* Washburn and Hyde, for the plaintiffs, cited to the point, that the order of the overseers of Charlton was not a justification to the defendant, because it did not contain a recital of such proceedings as would authorize them to issue the order, *Pearce* v. *Atwood*, 13 Mass. R. 344 ; *Sandford* v. *Nichols*, 13 Mass. R. 288 ; *Stetson* v. *Kempton*, 13 Mass. R. 282 ; *Savacool* v *Boughton*, 5 Wendell, 170 ; *Earl* v. *Camp*, 16 Wendell, 562.

*Davis*, of Charlton, and *Child*, for the defendant, said that the order was sufficient in point of form ; that in effect it asserted that the overseers had taken the steps required by law ; *Briggs* v. *Murdock*, 13 Pick. 305 ; and that the defendant was not obliged to go behind his precept and show the regularity of the proceedings of the overseers. *Sandford* v. *Nichols*, 13 Mass. R. 288 ; *Haskell* v. *Sumner*, 1 Pick. 459 *Stetson* v. *Kempton*, 13 Mass. R. 283 ; *Swift* v. *Chamberlain*, 3 Connect. R. 537 ; *Luddington* v. *Peck*, 2 Connect. R. 700 ; *Parmalee* v. *Baldwin*, 1 Connect. R. 313.

*April term 1839.* SHAW C. J. delivered the opinion of the Court. This action is brought to recover a penalty, supposed to have been

incurred by the defendant, in carrying a poor person, standing in need of support, from Charlton to Sturbridge, and leaving her there, contrary to the provisions of the statutes. Revised Stat *c.* 46, § 24. This transaction having taken place in May, 1837, it must be decided conformably to the Revised Statutes, which went into operation in May, 1836.

The ground of defence was, that the defendant was a constable of the town of Charlton, and that he carried the poor person in question, from Charlton to Sturbridge, under the authority of an order, made and addressed to him in his official capacity, by the overseers of Charlton, requiring him to remove the pauper ; and in fact to do what he did do, and what is complained of as a violation of law, in this case.

Several exceptions were taken to the sufficiency of this order, which resolved themselves mainly into this, that the order did not on the face of it, recite such acts and proceedings on the part of the overseers of Charlton, as would warrant them in removing the pauper. The law having provided that where the overseers of one town shall give a certain notice to those of another, and the overseers to whom the notice is given, shall have failed for the space of two months to answer it, and in that event only, the overseers of the town giving the notice may by written order cause the removal of the pauper, it was contended, that it must not only be true in fact, but must be recited in the order itself, that such proceedings have been had, in order to justify the removal. It was also contended that evidence *aliunde* was not admissible to supply the want of a recital of the facts, in the order itself.

We have not thought it necessary to decide upon all these exceptions specifically, because the Court have come to a decision which renders most of them immaterial in the present case.

This is a penal action ; it proceeds on the ground of punishing the defendant, for a violation of a law, made for the public benefit. If the action can be maintained at all by the town, it is an action substituted for a prosecution by indictment. The purpose is wholly penal and not remedial. Some of the rules of law, applicable to the case of civil rights, are not applicable to such a case as this. To maintain the action,

it must appear that the act was done with an unlawful intent Such is the construction which has been put upon the statutes of which this is a revision. *Greenfield* v. *Cushman*, 16 Mass. R. 393 ; *Sanford* v. *Emery*, 2 Greenl. 5 ; *Deerfield* v. *Delano*, 1 Pick. 465. I am aware of the maxim, that every man is supposed to know the law, that ignorance does not excuse, and that he who does an act, which is a plain violation of law, must be presumed to have done it wilfully, and this maxim is necessary to prevent obvious evasions of the law, under a pretence of ignorance or innocent purpose. But in this case, by the legal effect and operation of this statute, the act of bringing and leaving a poor person in any town is made unlawful, in consequence of the intent, wrongfully and injuriously to charge such town with his support. If therefore it appear from the facts, that although the act was done, it was not done with the unlawful intent contemplated by the statute, the penalty is not incurred.

Again, the Court are of opinion, that this is distinguishable from that large class of cases, in which a person does an act which would ordinarily be a violation of the rights of another, either in his person or property, and seeks to justify himself on the ground of a warrant or authority ; there the act, being *primâ facie* an infringement of the rights of another, unless the party complained of was duly authorized, his authority must be proved strictly. So where an officer takes property on an execution or warrant of distress, issued by assessors or other officers, he must clearly make out his authority and show that he was justified by his warrant in doing the act. So if an officer goes to arrest another, as that act would deprive him of his personal liberty, the authority is to be more strictly construed.

In the present case, the order under which the defendant acted, did inform him that the pauper had her settlement in Sturbridge, that she was then in need of relief and actually chargeable to Charlton, and it required and directed him, as an officer of the town, in conformity to law in such case made and provided, forthwith to remove the pauper from Charlton to Sturbridge, and this was signed by the overseers. The overseers have authority, after having complied with the requi-

sitions of the statute and given due notice, which has not been regarded, to cause the pauper to be removed by a written order directed to any person therein designated, who is thereupon authorized to execute the same. Now when the question is, as to the criminal intention of the party acting under such order, the Court are of opinion that such party may have presumed and had a right to presume that the officers had done all the acts, which would justify them in making such an order. And whether this would have been a justification to the defendant, from all consequences of obeying the order or not, it goes to repel and rebut the allegation, that this removal was made for the unlawful purpose mentioned in the statute. It is a very different question, where one claims, in virtue of an authority, to establish a right or control over the property or person of another, and where it is used defensively and relied on as an honest excuse. *Savacool* v. *Boughton*, 5 Wendell, 170 ; *Earl* v. *Camp*, 16 Wendell, 562. In an early case already cited upon the statute of which the present one is a revision, it was held that if any one carried a poor person into a town, with an honest purpose of helping him on a journey, and not with an intent to charge such town with his support, it was not within the statute. *Deerfield* v. *Delano*, 1 Pick. 465. Indeed an officer in lawfully removing a poor person from one town in the Commonwealth to a distant town, must necessarily transport the pauper through various intermediate towns, and if the pauper should be taken sick at any such intermediate town, and there create expense, it would be absurd to hold that the officer removing would incur a penalty.

Had the pauper in the present case objected to the removal, and the defendant had used force in the execution of the order, and the pauper had brought an action for assault and battery, and false imprisonment, it would have presented a very different question, and the exceptions taken to the order, and the arguments in support of them, would have been entitled to great consideration. The specific ground of the present decision is, that this prosecution is purely and exclusively penal, and not remedial ; that the object is, to punish an offence and not to indemnify the town against any supposed injury to them ; that to constitute that offence, the defendant must have removed

the pauper with an unlawful intent to charge the town for her support; that an intent to execute that order with an honest purpose, and under an honest belief that it was a valid and sufficient warrant for the purpose, disproves the allegation of such unlawful intent, and therefore that the action is not maintained and the defendant is entitled to judgment.

There is another legal objection to the plaintiff's right to recover, not insisted on at the trial, but which appears to me very strong, and which I think proper to notice, lest it might be supposed from the silence of the Court, that, but for the objections stated above, the action would well lie.

This is not an action *qui tam,* in which the plaintiffs sue for the Commonwealth as well as for themselves; but it is an action of debt, as for a penalty due to themselves. This action, as it has been already stated, must depend upon the provisions of the Revised Statutes. Revised Stat. *c.* 46, § 24. This simply declares that the person who does the act shall forfeit a sum not exceeding $100, but does not appropriate the penalty, nor direct how or by whom it shall be recovered. In this respect it differs essentially from the former statute, which, for a like offence, declared the party liable to forfeit £20, to be sued for, and recovered, to the use of such town. *St.* 1793, *c.* 59, § 15. It was upon that former statute, that the actions were founded, which have been heretofore cited. But the latter provision is omitted in the corresponding enactment of the Revised Statutes, and it was apparently omitted by design. If so, then this penalty is to be sued for and recovered, in the same manner as other penalties for offences are to be recovered, when no mode is designated, and no appropriation made.

By the Revised Stat. *c.* 133, § 14, all fines and forfeitures imposed as a punishment for any offence, when no other appropriation is made, shall be deemed to be appropriated and shall accrue to the use of the Commonwealth and be prosecuted for by indictment.

And by the Revised Stat. *c.* 118, § 42, when a forfeiture is imposed by law, without any express provision for the mode of recovering the same, or when made recoverable by bill, plaint or information, it may nevertheless be recovered in an action of debt, or trespass on the case.

There seems to be no express authority given to the town to sue for its own use for such penalty, nor to "the party grieved," nor any such general designation, under which a town situated as the plaintiff town is, could be included. It has been suggested that it might be provided for, in *c.* 46, § 26, which after various regulations for the support and maintenance of the poor, removal &c., and specifying various cases, in which towns may sue and be sued, and imposing the penalty first above stated, against bringing a poor person into any town, but not giving the penalty to the town, or authorizing them to sue for it, provides, that in all actions and prosecutions, founded on the provisions of this act, the overseers of the poor of any town, or any person by them in writing appointed, may appear, prosecute or defend the same in behalf of such town. It appears to me that this section did not give to towns any new right of action, but was intended to provide that in all suits, arising under the poor laws, in which the town may, by law, be a party plaintiff or defendant, the overseers may *virtute officii* prosecute or defend without special authority, and the terms " all actions and prosecutions," must necessarily be limited to the case of actions and prosecutions, in which the town may be a party. If taken literally, " the overseers of any town," would not be limited to the town aggrieved, but the overseers of any other town might as well commence and maintain an action, in the name of their town, as the overseers of the town aggrieved. This I think cannot have been the intention of the legislature and is not the true construction of the statute, and the terms, " all suits and prosecutions," must from the context and subject-matter be held to mean, " suits and prosecutions " in which, by the provisions of the statute, their respective towns are parties. But the cause is not decided upon this ground, but upon that first above stated.

*Plaintiffs nonsuit.*