By the Court, Cowen, J.
Clearly, this is not a case for our interference with the verdict because it was contrary to the weight of evidence, either on the question whether any injury was done, or on the right supposed to have been acquired by adverse enjoyment, or on the amount of damages recovered. Nor is there any serious question arising upon the judge’s admission or rejection of evidence.
The objection to the judge’s charge raises a point of more difficulty. Had the statute of 1829, stopped with a general authority to construct and complete the canal, the power to authorize the raising of any dam in the outlet, at any stage of the work, would have been implied. The adjudication of the canal commissioners, that the ten inch addition to the defendants’ dam was necessary to raise the reservoir with a view to an adequate supply of water, would, in such case, have been valid. The defendants would, therefore, have been protected, as having acted under the authority of a court possessing - competent jurisdiction over the subject matter; for there is no pretence that they have raised their dam higher than the canal commissioners directed them to go. I take it for granted that the alleged permission was given, because, although the evidence to this fact was not all that way, yet the decided balance of it was, and the judge assumed in his charge that the per *283 mission was sufficiently established. Then, by repudiating it as beyond the commissioners’ jurisdiction, he let in a claim for damages on that ground, which doubtless entered into the verdict, in part at least, .whatever the jury may /rave thought as to the effect of the dam, or the right to build and maintain it at the former height, independently of state authority.
But the statute did not leave the canal commissioners to act under a general and unrestricted power. By the second section, (1 R. S. 234, 2d. ed.,) they were required to cause an examination, surveys, levels and. estimates to be made, to ascertain whether an adequate supply of water could be obtained without injuriously affecting the hydraulic works on the outlet. This plan was to be, either by raising the water in the lake above high water mark,, by constructing a dam across or near the outlet, or by deepening the channel, &c. or upon any other approved plan. Then, by the third and subsequent sections, if, by the examination, &c. it should be ascertained to their satisfaction that a plan could be adopted which should work no injury to the hydraulic works, they were to pursue it in the construction of their work; but not unless the owners of the hydraulic works below should release all claim to damages, or the damages should be first assessed and paid, or tendered. And in no event was the work to be commenced, unless security should be first given to construct the canal for a sum not exceeding $120,000.
In executing this authority, the commissioners adopted Mr. Hutchinson’s plan, after he, as their engineer, had examined, surveyed, taken the proper levels and made the proper estimates, in the language of the act. This plan comprehended a top water level, to be secured by means of the state dam connected with regulating gates, the whole being entirely independent of, and not at all looking to the defendants’ dam below. The canal was then constructed, and put in operation upon that plan. The regulating gates were not actually erected till after the act of May 11, 1835, (1 R. S. 326, 2d ed.) By this act, some additional *284 powers were conferred upon the commissioners, but none which affect the question between these parties. In the meantime permission was given by the commissioners, for the defendants to raise their dam as a substitute for the gates of the original plan; and it can hardly be disputed, that it proved considerably more injurious to the plaintiff than those gates would have been. For the injury thus occasioned, he had a right to demand damages, unless a power remained in the commissioners to depart from the original plan. It has been impossible for me to perceive any rule of construction under which such a power can be claimed. The statute expressly directed them to procure and adopt a plan, preliminary to the commencement of the work. It had reference not only to the expense of the work, but especially to the manner in which the flow of the water might be modified. The height to which the water was to be raised, and the manner in which it was to be regulated, was a most material object of inquiry in fixing on a plan, not only in reference to the works below, but the interests of proprietors above the state dam. And any departure from it, even in the structure of the state dam, injuriously affecting the citizen, would form a ground for the recovery of damages. A fortiori, in directions given to raise another dam to which the plan had no reference whatever. The ‘commissioners having once passed tipon the question, their powers were at an end. These powers were quasi judicial. The adoption of a specific plan, was but another name for the rendition of a judgment by a court of limited jurisdiction. Such a step is in its nature irrevocable, and incapable of modification. Above all, should it be so holden, after it is acted upon, and purchases made, or other valuable interests acquired in reference to it. In this respect, the power under which the canal commissioners acted,, resembles that of commissioners of highways or streets, relative to planning and laying out ways; only it is still more limited.
The more plausible suggestion certainly is, that the defendants were protected, because the canal commissioners *285 had jurisdictióú ‘of the sübject matter; and although the latter might not be protected, yet the defendants should be, inasmuch as they -acted under the direction of a body which was, prima facie, authorized to give the direction. But that rule certainly cannot apply to a case where the judicial body is limited to a single act, and has become functus officio by its performance. Jurisdiction over the subject mat-thus ceases, and must be regarded for all purposes as if it never existed. The case differs in more respects than one. from that of an officer acting under an order or process emanating from a magistrate or commissioner having power to act on certain questions of property, as they may accidentally arise in the form of litigation, assessment, or the like. The state thus creates a general agent, for whose acts his inferior minister ought not to be held accountable, although the superior may hate exceeded his power. It is otherwise of a special limited agency. But beside, I am not aware that the rule of protection in Savacool v. Boughton, (5 Wendell, 170,) and its kindred cases, has ever been extended to the inferior officer or agent, unless the order or process be such on its face as, if valid, he is compellable by law to execute. (Vide Earl v. Camp, 16 Wendell, 562.) I admit that it need not be in writing. If he be compellable to act under a parol order, he ought equally to be protected. But the defendants were not. They were mere volunteers, who might have taken time to inquire and satisfy themselves whether the power had been exhausted. (Id.) In Painter v. The Liverpool New Gass & Coke Co. (6 Nev. & Mann. 736,) Lord Denman, Ch. J. said: “ If a third party chooses, for his own benefit and advantage, to interfere, and take upon himself to execute a writ, he must take care and see that it is a valid process.”
But, it is said the canal commissioners had general power to direct as to repairs; and we are referred to 1 R. iS. p. 206, § 17, 18, and p. 208, § 32, 2d ed. Sections seventeen and eighteen authorize the three acting commissioners to submit surveys, &c. and obtain leave of the canal *286 board, to make extraordinary repairs or improvements. But that does not appear to have been done here; and we .can no more presume an application to, and a judicial act of the canal board, than we could presume a suit and judgment rendered. Section thirty-two, subdivision three, authorizes the acting canal commissioner for the line to prosecute the work when such leave shall be obtained. That of course has no application. The same section, subdivision two, authorizes him to direct and cause to be made such ordinary repairs as he shall perceive to be necessary. But to call this ten inches addition to the defendants’ dam, a repair, in any sense, would be straining the word altogether beyond its natural meaning. It was a completion of the measure for raising and maintaining the reservoir at its top water line, contrary to the original plan. A church is finished, except the steeple; surely it would be a great departure from accuracy, to call the finishing of the work on the steeple, a repair.
But the addition to the dam does not rise above the top water line; and therefore, it is said, no mischief is done beyond what would accrue from the state work. That cannot be so. The addition was a permanent structure ; whereas the gates, properly managed, have the capacity to accommodate themselves to the state of the water above, whether high or low, so that it shall not rise above the prescribed line. The complaint is, that the defendants’ dam does its mischief mainly, perhaps entirely, by not yielding, or being capable of modification, in times of very high water. This is doubtless so; at least the jury were right in saying so on the evidence.
On the whole, we think the learned judge was right in his direction to the jury; and that a new trial must, therefore, be denied.
New trial denied.