PRYNE *vs.* WESTFALL and others.

In an action of trespass brought by a constable, for the taking away of property levied upon by him under an execution, but of which property he has taken no actual possession, the action being brought for the benefit of the plaintiff in the execution, the plaintiff must prove a *judgment*, if required to do so. Proving the *execution* alone is not sufficient.

ERROR to the Onondaga common pleas. Pryne sued Henry Westfall, jr. Martin Austin, and Caleb Jeffers, in trespass, before William Bentley, a justice of the peace. On the return day of the summons the plaintiff declared against the defendants verbally, alleging that on the 3d of August, 1846, the defendants took and carried away from a certain pit one load of coal, the property of the plaintiff, which he had levied on as a constable

by virtue of an execution issued by E. B. Wigent, a justice of
the peace, in favor of Peter Barber, against Martin Austin, one
of the defendants, as Austin's property.   The defendants plead-
ed the general issue separately, and gave notice that they would
show, on the trial, that the title to the coal mentioned in the
plaintiff's declaration was in Henry Westfall, jr. one of the de-
fendants; and that if he took and carried away the coal he
took and carried away his own coal, as he had a right to do.
The other defendants, Austin and Jeffers, gave notice that if
they did any thing in moving the coal they acted by order of
Westfall, being his hired men, and the coal being on his land ;
and that they had a right so to do.   The cause was tried by a
jury.   The plaintiff introduced Alanson Fancher as a witness,
who testified that he was acquainted with E. B. Wigent ; that
he was a justice of the peace ; that the witness knew his hand-
writing ; that he knew the plaintiff was a constable, and had
been since town meeting ; that he knew his hand-writing ; that
the signature to the execution exhibited in court was in the
hand-writing of E. B. Wigent; " renewal" was also in his
hand-writing ; that the endorsement of the levy on the back of
the execution was in the plaintiff's hand-writing, but that the
interlineation in the endorsement in the words " on Henry
Westfall's premises" was not, he thought, in his hand-writing.
The plaintiff offered to read the execution and endorsement of
levy in evidence.   The defendants objected to the reading of
the same, on the ground that the plaintiff had not given suffi-
cient evidence to entitle him to read the same, and on the
ground that a part of the endorsement was not in the plaintiff's
hand-writing.   L. R. Morgan was then sworn for the plaintiff,
and offered to testify that the interlineation was made by him.
The defendants objected, but the objection was overruled, and
the witness testified that he made the interlineation by the re-
quest of the plaintiff, after the trial commenced.   The execu-
tion was again offered in evidence, and received, although
objected to by the defendants.   It referred to a judgment ren-
dered before the said Wigent as justice of the peace, in favor of
Peter Barber, against Martin Austin, on the 3d of September,

1844, for $10,21; execution issued on the 19th of the same month. On the 28th, there was collected $3,50, and the execution was returned with no more property found. Execution renewed July 30, 1846, by the justice. The plaintiff then offered the endorsement of levy, on the back of the execution. This was objected to, on the ground of its not being in the plaintiff's hand-writing. The objection was overruled, and the endorsement read. It stated that the plaintiff had made a levy on a pit of coal on the premises of Henry Westfall, then belonging to the said Martin Austin. After the introduction of some other evidence by the parties, the defendants moved for a nonsuit; which motion the justice denied, on the ground that there was sufficient evidence to go to the jury. The plaintiff's counsel admitted upon the trial that the suit was brought for the benefit of Barber, the plaintiff in the execution. The defendants' counsel asked the court to charge the jury that to entitle the plaintiff to recover he was bound to prove a valid *judgment,* as well as the execution issued thereon. The justice refused so to charge, but charged the jury that if they believed, from the evidence, that the coal belonged to Westfall, the defendants were not liable. The jury found a verdict for the plaintiff, and the justice rendered judgment against the defendants for $9,42. The defendants carried the cause to the court of common pleas, by certiorari, and that court reversed the judgment of the justice.

*Le Roy Morgan,* for the plaintiff in error.

*M. B. Church,* for the defendants in error.

*By the Court,* GRIDLEY, J. We deem it necessary to notice but one of the grounds of error relied on as fatal to the judgment rendered by the justice. The action, in the court below, was brought by the constable for the *benefit of Barber, the plaintiff in the execution,* against three defendants, one of whom was the defendant in the execution and the others were strangers; the defendants pleading separately. The constable

had levied upon the property in question, but had taken no *actual possession* of it. It is true that the property was of a ponderous character, so as to excuse a purchaser from the duty of removing it to his actual possession under the act relating to fraudulent sales. That circumstance does not, however, alter the nature of the possession. It was *constructive* only. In such a case, we think it indispensable that the plaintiff, though he be an officer, should *prove a judgment.* Were he a *defendant,* his execution, without the judgment, if valid on its face, would afford him protection against a suit brought for the seizing the property by the defendant in the execution. (*Savacool* v. *Boughton,* 5 *Wend.* 170.) Had he taken *actual possession* of the property, such possession would be prima facie evidence against a stranger. But when he sues, as he does here, on a mere constructive possession, created by the levy of the execution, to recover for *the benefit of the plaintiff in the judgment,* we think he must prove the judgment; if required to do so. Such is the reasonable rule, and such we understand to be the result of the authorities. (*See the authorities collected in* 2 *Cowen & Hill's Notes,* 107, 8, 9 ; 1 *Hill,* 118 ; 2 *Denio,* 642 ; 16 *Wend.* 562 ; *Cowen's Tr.* 278, *and cases there cited.*)

The objection, that the judgment should be proved, was taken during the progress of the trial, in a general objection to the right to give the execution in evidence, without further proof. If it be said that this objection was *too general,* to inform the justice of the precise ground upon which it was urged, that remark will not apply to the distinct request, made to the justice for his instruction to the jury on that subject, before the cause was finally submitted. The answer of the justice was *significant* and *decisive.* It was a refusal placed, 1st, on the ground that the objection had not been made till after the execution had been read to the jury ; and 2d, that the execution was good evidence, and had been read to the jury as such, without the judgment. There was no complaint that the witness or documentary evidence to prove the judgment, were not present in court ; if in truth the plaintiff had been provided with any such evidence. Nor was there any reasonable ground

assigned for refusing to give the instruction asked for. When a justice has a discretion, it is a judicial discretion, to be exercised reasonably and not arbitrarily. (*7 John.* 306.) The refusal was substantially a charge that no proof of the judgment was necessary, and was therefore erroneous. At all events the point was clearly taken by the defendants' counsel before the jury, and there was no ground for the presumption of a waiver of the proof on the part of the defendants. And without it, there was no ground for either a verdict or a judgment against them.

The judgment of the common pleas must be affirmed.

