## ELDER *vs.* MORRISON.

A person acting *in aid of an officer* and by his commandment in overcoming resistance to the execution of process is a trespasser, if the officer is not justified by the process ; as where, on an execution against A., property is attempted to be taken from the possession of B., who resists the officer, and a by-stander commanded to assist forcibly lays hands upon B. to over-come his resistance, if it turns out that the property is the property of B., and not of A., the by-stander is liable for an assault and battery.

The by-stander obeys at his peril ; if the officer has authority to do the act, for the doing of which aid is required, the by-stander is bound to obey and is justified, and if he refuses or neglects, is guilty of a misdemeanor, and subject to fine and imprisonment ; on the contrary, if the officer has no au-thority to do the act, the by-stander is not bound to obey, and if he yields obedience, is a trespasser.

ERROR from the Orange common pleas. Morrison sued Elder in an action of assault and battery. The defendant pleaded the general issue, and gave notice of special matter. On the trial, the following facts appeared : The plaintiff, on the premises of one *Milburn*, offered for sale two horses at public auction, in pursuance of a previous notice. *Woodward*, a constable of Walkill, having in his hands a justice's execu-tion against *Milburn*, was present and forbade the sale, claim-ing the horses under the execution and demanding possession of them, which the plaintiff refused to yield. Woodward de-manded assistance from the by-standers ; no one obeying him, he called upon the defendant by name to assist him in obtaining possession of the horses, and threatened him with legal proceedings if he did not obey. Woodward succeeded in obtaining possession of one of the horses, and then he, the plaintiff, and the defendant went into the stable where the other horse was, upon which a struggle ensued as to who should have the possession of that horse, in the course of which the defendant jerked the plaintiff about, who had hold of a halter which was upon the horse, elbowed him and threw him down, which was the assault and battery complained of. The defendant, under the notice attached to his plea, proved the rendition of a judgment against Milburn, the issuing of an execution thereon, and a delivery of the writ to Wood-

ward, and that by virtue thereof and of another execution subsequently received, Woodward, who was indemnified by the plaintiff in the execution, sold the horses.  At the time of the levy, Woodward inquired of Milburn where his horses were, who pointed out the horses in question.  The plaintiff offered to prove that he was the owner of the horses at the time of the taking by Woodward, which evidence was objected to by the defendant, but the objection was overruled and the evidence received ; to which decision the defendant excepted.  The jury found a verdict for the plaintiff with $25 damages, on which judgment was rendered.  The defendant sued out a writ of error.  The cause was submitted on the following *written arguments :*

*A. Dimmick,* for plaintiff in error.  The error relied on for reversal of the judgment is, that the court below permitted evidence of title in the plaintiff to the property in question to be given under the circumstances of the case.  The property was on the farm in possession of *Milburn,* the defendant in the execution, and claimed or recognized by him as his property, and the officer was indemnified for taking and selling it. An officer, (sheriff or constable) on being indemnified by the plaintiff in an execution, is bound to sell the property claimed by such plaintiff as the property of the defendant in the execution.  *Cowen's Treatise on Justices' Courts,* 661.  10 *Johns. R.* 98.  15 *id.* 147, 151.  8 *Cowen's R.* 65.  If resistance be made to the service of process, or if the officer "shall find or have reason to apprehend that resistance will be made to the execution of such process, he is authorized to command every male inhabitant of his county to assist him in overcoming such resistance," 2 *R. S. p.* 441, § 80 ; and "every person commanded by the sheriff or other public officer to assist him in the execution of process as herein provided, who shall refuse or without lawful cause neglect to obey such command, shall be deemed guilty of a misdemeanor and subject to fine and imprisonment." *id.* 441, § 82.  The officer being bound to sell, must have the right to possess himself of the property, and for this purpose the statute has given him

the power, and it thereby becomes his duty to call in aid others to overcome resistance. The person thus called to his aid must stand justified by the law ; otherwise, if he refuses, he is liable to indictment and fine and imprisonment. Had the defendant *neglected* to assist the officer, such *neglect* would have been tantamount to an absolute *refusal,* and no excuse could have justified him. Should it be urged on the other side that the person thus called in aid of an officer is bound to know *whose* is the property thus levied upon or sought to be levied on, it is answered, that if so, he would stand in this awkward and responsible dilemma : he must decide in a moment the title to the property, however much a stranger to or ignorant of the same, without time and without means or power given him by law to examine or inquire into the title ; if he decides wrong one way, he may be prosecuted for trespass in a civil suit, and also be indicted ; and if wrong the other way, he is to be indicted for a misdemeanor and fined and imprisoned : indeed, for a *refusal* he is indictable *per se,* as the statute does not contemplate that in such a case any excuse or lawful cause can be permitted or shewn.

Besides, could it be a " *lawful cause*" or excuse for a person to refuse or neglect giving aid to an officer, by setting up that he did not *know* whose was the property sought to be levied on or seized ? If so, every defendant in an execution might prevent a seizure simply by setting up title in another, and the officer could never compel others to assist him ! It is contended, on the part of the plaintiff in error, that the true and legitimate construction of the statute is, that persons thus called in aid of an officer are justified in all their acts necessary to overcome such resistance, whether the title to the property in question be or be not in the defendant in the execution, and more especially where, as was the case here, there was presumptive evidence of the property being in the defendant in the execution. If this be the true construction, it follows as a necessary consequence, that the defendant below had no concern with the question of title, and the court erred in permitting the plaintiff to give evidence of it. It cannot be pretended that here was an excess of violence, so as to render the defendant below liable on that ground ; the testimony contradicts such

a position. But be that as it may, if there was such excess, the defendant below was equally liable for the excess, whether the title was in the defendant in the execution or not, and the evidence of title could not *add* to such liability. But the question may be urged, has not a man a right to protect his own property? and is not the officer bound to levy by execution on the goods of the defendant in the execution, and not on the property of others? To the first question it may be answered, that as a general rule, a man has such right ; but as against a public officer, and more especially an individual summoned to his aid and bound to act under the penalty of fine and imprisonment for refusal or neglect, a person setting up title ought not, and as is conceived, cannot be justified in *resisting* the execution of the process. Public peace and public policy require that in such a case he should resort to the law of the land, by which he may peaceably repossess himself of the property, and the rights of others not be infringed. In reply to the second question, it may be conceded that the officer is a trespasser, if he levies the execution on property not belonging to the defendant in the execution. But it by no means follows as a necessary consequence, that the owner may, especially where there are circumstances of doubt or uncertainty as to title, *resist* the officer, and more especially one called to his aid and bound to act. The *taking by the officer* is one thing, and the *overcoming resistance* is another. The defendant below is not bound to justify the *taking of the property* by the constable or officer, but only to justify *his assistance* in *overcoming the resistance* made by the plaintiff below. So far he must be protected, or the law imposes upon him as a *duty* the *commission* of a *crime* as well as a trespass.

*W. J. Street*, for defendant in error. 1. If the principal be a trespasser, all persons acting in his aid or by his command, are trespassers also. *Chitty's Pleadings, vol.* 1, *pages* 72, 185, 186. 14 *Johns. R.* 119. The act, 2 *R. S.* 441, is only declaratory of the common law. *Oystead* v. *Shed & others*, 12 *Mass. R.* 506, 512, is a case in point. It was an action of trespass for taking articles under a writ of replevin, which were not liable to the same. Two of the defendants set up the officer's command in justification, and the court on that point say,

" they are satisfied (the officer's act being illegal,) as well from authority, as the reason of the thing, that the defence cannot be sustained." Indeed, any other doctrine would be subverting first principles and a settled rule of law. If it be a hardship for a person called by an officer to assist him, to decide at his peril, it is quite as hard that the rights of innocent individuals should be invaded with impunity. The law of the land always affords redress for an injury sustained. Who, therefore, should be preferred; the one who is doing a lawful act, i. e. protecting his own property, or he who aids the commission of an unlawful one ? The fair meaning of the statute is, that the officer shall have process against *the* individual on *whose person or property he is executing it.* The constable had *no "process"* against the *plaintiff* below, and was not invested with legal authority to command assistance in an invasion of *his* rights. Suppose the officer had *no process against any person,* could a defendant set up his *bare command* as a justification ? Still, this is the corollary of the argument on the part of the plaintiff in error. In the case suggested, the necessity of an immediate decision on the part of the individual whose assistance is required would be quite as great and his dilemma just as embarrassing as in any other supposable case ; and yet if he obeys, his legal liability cannot be doubted. The act does not intend that the assistance required shall in all cases be rendered blindly and without reflection or inquiry ; for if so, it might be the means of inducing the most flagrant outrages, and covering with the mantle of legal impunity acts of violence preconcerted between an irresponsible officer and other malicious individuals.

In the present case it does not appear positively from the bill of exceptions, whether the levy was made before or at the time the assault and battery was committed. If before, the officer was not of course engaged in the " *execution of process,*" in the exercise of which duty *only* the law has invested him with power to command assistance ; and having elected to leave the property in the possession of the defendant in the execution, he was not authorized to retake it by force from any third person, but *should have brought his action.* If, however, he levied at the time, his act was unlawful, no matter in whom

the real title of the property was, for it being in the manual custody of a third person, the officer had no right to levy and forcibly divest him of the possession, but in so doing he, as well as the person assisting, were breakers of the public peace. "A horse cannot be distrained when a person is riding him, for it would perpetually lead to breaches of the peace." 6 *T. R.* 138. 14 *Johns. R.* 406.

The case was altogether a flagrant one. The plaintiff below had a right to protect his own property, and the defendant was present during the whole controversy between the constable and the plaintiff, and must have heard his claim of the property, and his offer to guarantee the title to any purchaser. The deduction to be drawn from the suggestion of the officer's being compelled to proceed on being indemnified, is evidently favorable to the defendant in error, because, notwithstanding this *lega obligation* thrown upon a party, he is not thereby protected in an invasion of the rights of third persons, but is a *trespasser*, in case his acts turn out to be unauthorized by the process. The proof of title was therefore important, in order to show that the defendant below had no justification, as a case might exist in which the plea of *molliter manus imposuit* would bar a recovery.

2. Although the above point may be involved in this case, it was independently of it, important and competent for the plaintiff below to shew that the property was indeed his, in order that his *damages might not be lessened* by the facts set up on the part of the defendant. If such proof were improper, the defendant drove the plaintiff to it. By proving Milburn's possession and claim of the property, he threw an imputation of fraud under the statute upon the plaintiff, which it was necessary to rebut. It would be very natural for the jury to conclude, in case they supposed the plaintiff was assisting Milburn to cheat his creditors, or that he was impertinently interfering in what did not concern him, that he deserved a little beating, and even if more force was used than the circumstances appeared to require, which *in all cases is matter for the jury only*, they would, perhaps, have winked at it, and might accordingly have refused the plaintiff a recovery for what would lawfully have entitled him to it, in case *he* himself had been the *original aggressor*. It would

be unreasonable to compel a party to go to the jury under such unfavorable circumstances.

If the proof of title were wholly unimportant, and could have had no effect upon the *amount* of the recovery, the court will not award a *venire de novo* for that reason, for it then follows that the plaintiff in error was not injured by the decision of the court below. *2 Johns. C.* 85.

*Dimmick*, in reply. The argument of the defendant in error seems to take for granted, that if a trespass was committed in taking the property, the plaintiff in error is without justification for his aid in *overcoming resistance* to the officer ; but this is a *non sequitur*. The *taking* of the property under the execution is one thing, and the *overcoming resistance* to the taking is another and very different thing. The establishment of the first proposition by no means supports the second.

None of the authorities referred to by the opposite counsel apply to this case. The cases in *Chitty* refer merely to liabilities of master and servant, and not to sheriffs and constables, much less to those coming in their aid by their command ; and the case in 12 *Mass. R.* only decides that for taking property not liable, the sheriff and those acting in his aid are responsible for *taking* the property ; but it by no means decides that the officer or those called to his aid are responsible for *overcoming resistance* to the taking or service of process. Besides, it does not appear whether the laws of Massachusetts are the same as our own in giving power to officers, and it may at least be doubted whether our present statutory laws conferring power to overcome resistance to the service of process, be not an amplification of the common law. But that question seems not necessarily involved in this case.

It is asked by the opposite counsel who should be preferred, the one engaged in the commission of a legal act, i. e. protecting his own property, or he who aids in the commission of an unlawful one ? This question seems to assume two things as granted, to wit, that a man under all or any circumstances may protect his own property by resistance to any one, whether a public officer or not, who attempts to take

it from him ; and also, that the act of the plaintiff in error, in overcoming the resistance made by the defendant in error, was unlawful. Both these positions are denied. I am not at liberty to resist an officer in executing a writ of replevin on my property, however clear and palpable my title to the same may be ; and this would be as much an invasion with impunity of my rights, as the taking of the same under execution. The other principle assumed, takes for granted the whole question, inasmuch as it proceeds upon the ground that the *overcoming* of *resistance* is the same as *taking* the property. Besides, the officer and those called to his aid were in the *legal discharge of their duty*, not only in overcoming the resistance, but also in taking the property, although liable as trespassers for the *taking*. This at first view may seem a solicism or paradox, but it must necessarily result from the repeated decisions referred to, making it the indispensable duty of the officer to sell under such circumstances as existed in this case ; and before a contrary position can be sustained, these decisions must be overruled and reversed ; for to say that the officer is bound to sell only when the title *is in the* defendant in the execution, would make these decisions a dead letter, meaning nothing. If he is bound to sell, the owner, whoever he may be, is bound to permit the sale, or take his legal remedy by replevin to re-possess himself of the property.

It is said by the opposite counsel, that by the corollary of the argument of the plaintiff in error, a defendant could set up the *bare command* of the officer *without any process* as a justification. This is a mistake. The plaintiff in error has said, and still says, that persons *thus* called in aid of *an officer*, are justified in all their acts necessary to overcome such resistance ; that is, persons called in aid, as the plaintiff in error was, in this case, by an officer *having legal process*. No doubt, a person thus called on, might require the officer to shew his process.

The case of 6 *T. R.* 138, and the authorities there referred to, only shew the ancient law of *distress* as to things in " *actual use*," as a horse while the owner is riding and using him. The present, however, is a case of an *execution* levied on a

horse *not in actual use.* There is no similarity in the two ca͜-ses. The language of the judge in that case may, however, be applied here against the defendant in error with much force. If the law allows resistance to the officer, and the officer is also bound to sell, it may emphatically be said, "it would perpetually lead to a breach of the peace." But it is said on the other side this case was altogether a flagrant one, and the plaintiff below had a right to protect his own property. In what the flagrancy of the case consists, is difficult to discover. The defendant below was bound to act; and if he acted at all, he must so act as to effect the object for which he was called on to act; and how he could have acted with more prudence or propriety, is more than the defendant in error has been able to show or suggest. Even the witness of the defendant in error admits and testifies that the plaintiff in error "used these surges or jerks only to get possession of the horse," as he thinks. The assault was rather constructive than positive ; and if he was justified in acting at all, he must have been justified in using even more force than he did. It must be evident that nothing less than what he did do, could have overcome the resistance.

The argument, that evidence of title was necessary to prevent the damages of the plaintiff below from being lessened, proceeds upon an erroneous principle. It takes for granted that whether the title was in the plaintiff below or not, he had a cause of action; but his whole argument under the first head endeavors to show the necessity of this evidence to give him *a cause of action;* and it is too manifest to need comment, that as the cause stood at the time of taking the exceptions, the plaintiff below had no cause of action, and the defendant below stood perfectly justified, and the whole recovery rests upon the legality or illegality of that evidence. But if it be possible seriously to indulge the thought that there might have been excess of force or violence, how is it possible that the decision of the abstract question of title, one way or the other, could have increased or aggravated that excess?

In conclusion, public policy requires that officers, and those acting under their lawful commands, should be protected in

all the acts which the law imposes upon them, and that disputed rights to property situated as this was, should not be left to the squabbles between officers and others who may set up false as well as true claims. When the law imposes the duty of aiding an officer, it virtually declares the justification of a party for so doing ; and when it imposes the duty upon the officer *to sell*, it clothes him with power in the nature of replevin to *take* the property, leaving to the injured party, if any there be, his legal right of action by replevin or otherwise. Upon no other principle can the most prudent man protect himself against prosecutions on the one side or the other.

*By the Court*, SAVAGE, Ch. J. For the plaintiff in error, it is argued that the officer, when indemnified by the plaintiff in the execution, is bound to sell the property ; and that by the revised statutes, 2 *R. S.* 441, § 80, it is enacted that when a sheriff or other public officer shall find resistance, or have reason to apprehend it in the execution of any process delivered to him, he may command every male inhabitant of his county, or as many as he shall think proper, to assist him in overcoming such resistance, and in seizing and confining the resisters. The statute further requires that the officer shall certify to the court, from which the process issued, the names of the resisters, to the end that they may be punished for their contempt of such court. *id.* § 81. And it is enacted that every person commanded by an officer to assist him, who shall refuse without lawful cause, shall be deemed guilty of a misdemeanor, and subject to fine and imprisonment. *id.* §. 82. The inference drawn by the counsel for the plaintiff in error from these premises is, that the person who comes in aid of an officer to *overcome resistance,* is justified, whether the officer is or not justified ; and that the question of title to the property was not a proper subject of inquiry. On the part of the defendant in error, it is contended that if the principal be a trespasser, all persons acting in his aid or by his command are also trespassers ; that the fair meaning of the statute is, that the officer shall be aided in the lawful execution of his

process, and that such process must be against the individual whose person or property is attempted to be seized; that the process to authorize a justification must be against the person in possession of the property taken.

It is certainly true that if the officer be guilty of a trespass, those who act by his command or in his aid must be trespassers also, unless they are to be excused in consequence of the provision of the revised statutes. If a stranger comes in aid of an officer in doing a lawful act, as executing legal process, but the officer, by reason of some subsequent improper act, becomes a trespasser *ab initio*, the stranger does not thereby become a trespasser, *Cro. Eliz.* 181 ; *Cro. Car.* 446 ; but when the original act of the officer is unlawful, any stranger who aids him will be a trespasser, though he acts by the officer's command. *Oystead* v. *Shed*, 12 *Mass. R.* 511. The case in Massachusetts, just cited, was an action of trespass *de bonis asportatis* against Shed and three others; Shed and Fletcher justified as *officers* under writs of attachment, the two other defendants justified as servants of Fletcher; the plaintiff replied, and the defendants demurred to the replications. The court adjudged Fletcher's plea bad, and the justification of the other two defendants failed of course; and their ignorance of the law, it was said, would not excuse their conduct or diminish in any degree the injury which the plaintiff sustained. The case of *Leonard* v. *Stacey*, 6 *Mod.* 140, is to the same effect. That was an action of trespass for entering the plaintiff's house and taking away his goods. The defendant justified that he came in aid of an officer in execution of a writ of replevin. The plaintiff replied that he claimed property in the goods, and gave notice to the defendant before their removal. The court held the defendant was a trespasser *ab initio*, for though the claim should be made to the sheriff, yet if it be notified to him who comes in aid that claim is made, he ought to desist at his peril; thereby establishing the proposition, that if the officer is a trespasser, all those who act by his command or in his aid are also trespassers. Whenever a sheriff or constable has power to execute process in a particular manner, his authority is a justification to himself and all who come in his aid; but if his authority

is not sufficient to justify him, neither can it justify those who aid him. He has no power to command others to do an unlawful act; they are not bound to obey, neither by the common law nor the statute, and if they do obey, it is at their peril. They are bound to obey when his commands are lawful, otherwise not. The only hardship in the case is, that they are bound to know the law. But that obligation is universal; ignorance is no excuse for any one. The counsel for the plaintiff in error insists that there is a difference between aiding in the original *taking* and in *overcoming resistance*. It seems to me there is no such distinction. If the taking was lawful, the resistance was unlawful; but if the taking was unlawful, the resistance was lawful. If the resistance was lawful, neither the officer nor those he commands to assist him can lawfully overcome that resistance. Nor does the fact of the officer's being indemnified, confer on him any authority which he had not without such indemnity; he may thereby be compelled to do an illegal act in selling the property of strangers to the execution, but he is a trespasser in doing so, as are all others who aid him.

In any view of the subject which I can take, I am of opinion that the decision of the court of common pleas was correct, and the judgment should be affirmed.

Judgment affirmed.