Mr. Ch. Justice Joiinsos delivered the opinion of the Court. If any responsibility has attached to the appellant for his participation in the offence charged jointly against himself and others, it must have arisen from a defect of authority to authorize the original arrest. This being the case, it is, by no means, material whether the warrant of commitment was legal and valid or not. The appellant was not present when the arrest was made, but he was sent for and came in as one of the aids or guards after Cook was taken before the justice, and during the investigation, and consequently before Cook was committed. This being the state of case, the enquiry necessarily results as to his authority to do the act complained of, anterior to the period of commitment. It is true that the testimony does not expressly show that he was ordered by the constable to act as.a guard over Cook; yet, inasmuch as he had been sent for, and actually took the place of one of the original guards, it is fair to presume that he acted under the authority of the constable, and if so, of course he is entitled, at least, to the same protection. The language of the witness in respect to the character of the authority under which the original arrest was made, is precisely the same as that used in the case of Andrew J. Floyd against the State, decided at the present term; and, consequently, the legal effect must be the same in both cases. It is there laid down that the fact of confinement having been shown by the State, it devolved upon the defendant to make out his j ustification, and that having attempted to justify under a warrant, he must show one valid and legal upon its face. It was there held, under a similar state of fact to the one here developed, that one who procured the pretended warrant to bo issued, had not shown a legal justification since it did not even appear that the one relied upon ran in the name of the State of Arkansas. All then that was said there, in respect to the defect of authority, will apply with equal force here, unless there be a distinction between the situation of an informer, who is first instrumental in putting the law in motion and one who comes in subsequently and aids in its execution. It is contended by the counsel for the appellant, that the law will not hold a party coming in to the aid of an officer to the same strictness of authority as is required of the officer himself. In support of this position, he has submitted a most plausible and forcible argument, in which he has depicted the ruinous consequences which, under peculiar circumstances, the law would visit upon honest and innocent individuals. We are free to admit that the argument is ingenious and plausible, yet we think it will be found that the current of authority is clearly against it. In the case of Elder v Morrison, 10 Wend. 128 the Supreme Court of New York, by Savage, Ch. J., said: “It is certainly true that if the officer be guilty of a trespass, those who act by his command or in his aid, must be trespassers also, unless they are to be excused in consequence of the provision of the Revised Statutes. If a stranger comes in aid of an officer in doing a lawful act, as executing legal process, but the officer, by reason of some subsequent improper act, becomes a trespasser ab initio, the stranger does not thereby become a trespasser. Cro. Eliz. 181. Cro. Car. 446. But when the original act of the officer is unlawful, any stranger who aids him will be a trespasser, though he acts by the officer's command. Oystead v Shed, 12 Mass. R. 511. The case in Massachusetts just cited, was an action of trespass dc bonis asportatis against Shed and three others. Shed and Fletcher, justified as officers, under writs of attachments, the two other defendants justified as servants of Fletcher: the plaintiff replied and the defendants demurred to the replications. The court adjudged Fletcher’s plea bad, and the justification of the other two defendants failed of course; and their ignorance of the law, it was said, would not excuse their conduct or diminish, in any degree, the injury which the plaintiff sustained. The case of Lunard v Stacy, 6 Mod. 140, is to the same effect. That was an action of trespass for entering the plaintiff’s house and taking away his goods. The defendant justified that he came in aid of an officer in execution of a writ of replevin. The plaintiff replied that he claimed property in goods, and gave notice to the defendant before their removal. The court held the defendant was a trespasser ab initio, for though the claim should be made to the sheriff, yet if it be notified to him who comes in aid, that claim is made, he ought to desist at his peril; thereby establishing the proposition that if the officer is a trespasser, all those who act by his command, or in his aid, are trespassers. Whenever a sheriff or constable has power to execute process in a particular manner, his authority is a justification to himself and all who come in his aid; but if his authority is not sufficient to justify him, neither can it justify those who aid him. He has no power to command others to do an unlawfnl act; they are not bound to obey, neither by the common law nor the statute; and if they do not obey, it is at their peril. They are bound to obey when his acts are lawful, otherwise not. The only hardship in the case is, that they are bound to know the law. But that obligation is universal; ignorance is no excuse for any one. The counsel for the plaintiff in error insists that there is a difference between aiding in the original taking and in overcoming resistance. It seems to me there is no such distinction. If the taking was lawful, the resistance was unlawful; but if the taking was unlawful, the resistance was lawful. If the resistance was lawful, neither the officer, nor those he commands to assist him, can lawfully overcome that resistance. Nor does the fact of the officer being indemnified confer on him any authority which he had not without such indemnity: he may thereby become compelled to do an illegal act in selling the property of strangers to the execution, but he is a trespasser in doing so, as are all others who aid him.” The case referred to was an action of assault and battery brought by Morrison against Elder in the court below. The defendant pleaded the general issue, and gave notice of special matter. On the trial, the following facts appeared: The plaintiff, on the premises of one Milburn, offered for sale, two horses at public auction, in pursuance of a previous notice. Woodward, a constable of Walkill, having in his hands a justice’s execution against Milburn, was present, and, forbade the sale, claiming the horses under the execution and demanding possession of them, which the plaintiff refused to yield. Woodward demanded assistance from the by-standers; no one obeying him, he called upon the defendant, by name, to assist him in obtaining possession of the horses, and threatened him with legal proceedings if he did not obey. Woodward succeeded in obtaining possession of one of the horses, and then he (the plaintiff) and defendant went into the stable where the other horse was, upon which a struggle ensued as to who should have the possession of that horse, in the course of which the defendant jerked the plainliff about, who had hold of the halter, which was upon the horse, elbowed him and threw him down, which was the assault and battery complained of. The defendant, under the notice attached to his plea, proved the rendition of a judgment against Milburn, the issuing of an execution thereon, and a delivery of the writ to Woodward, and that by virtue thereof and of another execution subsequently received, Woodward, who was indemnified by the plaintiff in the execution, sold the horses. At the time of the levy, Woodward inquired of Milburn where his horses were, who pointed out the horses in question. The plaintiff offered to prove that he was the owner of the horses at the time of the taking by Woodward, which evidence was' objected to by the defendant, but the objection was overruled and the evidence received; to which decision the defendant excepted. The jury found a verdict for plaintiff with $25 damages, on which judgment was rendered. The defendant then sued out a writ of error, and the judgment was affirmed in the Supreme Court. The principle there established is, that a party who is called to aid an officer in the execution of civil process, does so at his peril, and that in case he shall invade the rights of strangers, he will be liable as a trespasser. That is a much stronger case than the one at bar, for he is not only bound to know that his principal is acting under lawful authority, but he is also bound to see that such authority is not abused by an invasion of the rights of strangers to the process under which he acts. It is conceded that the phraseology of the statute of New York is somewhat different from that of our own, yet we believe that they are substantially the same, and that consequently they should receive the same construction. The statute of that State bearing upon the subject under consideration is, “that when a sheriff or other public officer shall find resistance, or have reason to apprehend it in the execution of any process delivered to him, he may command every male inhabitant of his county, or as many as he shall think proper, to assist him in overcoming such resistance, and in seizing and confining the resisters,” and that “every person commanded by an officer to assist him, who shall refuse, without lawful cause, shall be deemed guilty of a misdemeanor, and subject to fine and imprisonment.” The language of our statute is that “In all cases whereby the common law or any statute of this State, any officer is authorized to execute any process, he may call to his aid all free white male inhabitants over the age of twenty-one years, of the county ilr which such officer is authorized to act,” and “If any person shall refuse or neglect to obey the summons of any such officer, the person so neglecting or refusing, shall be fined in any sum not less than ten nor more than one hundred dollars, to be recovered by indictment.” In the one case, therefore, the party summoned is bound to obey unless he shall have lawful cause to refuse; and, in the other, he is only required to yield obedience in such cases as the officer is authorized to act, either by the common or statute law. If he is only bound to obey in such cases as the officer is authorized to act, we think it clearly follows that the law will not protect him where the officer has no authority. It certainly would not be contended that an officer of the State 'with a process in his hands against one individual, would be authorized to execute it upon another, neither would he be authorized to seize in execution the property of a stranger to satisfy the debt of the plaintiff in the writ. It is assumed by the appellant’s counsel, that the parly called upon by an officer is bound to obey, and that having no option whether he will do so or not, he must, of necessity, be protected against any evil consequences which may result from his acts! If the premises were true in point of fact, it might be difficult to resist the conclusion drawn from them. But such is not the case. The law, as laid down in the case just referred to, is that “He has no power to command others to do an unlawful act; they are not bound to obey, neither by the common law nor the statute, and if they do obey, it is at their peril. They are bound to obey when his commands are lawful, otherwise not. The only hardship is, “that they are bound to know the law.” It will be seen, therefore, that a party is not bound, right or wrong, and whether the officer is authorized to do the act or not, to render obedience to his command. It is most clearly his right to refuse in case the officer has no legal authority to do the act, and it is equally clear that he has no such right in case the officer has such authority. He must, therefore, act or decline to act at his peril. If it be a hardship for a person, called by an officer to assist him, to decide at his peril, it is quite as hard that the rights of innocent individuals should be invaded with impunity. The law does not intend that the assistance required shall, in all cases, be rendered blindly and without reflection; for if so, it might be the means of inducing the most flagrant outrages and covering with the mantle of impunity acts of violence precon-certed between an irresponsible officer and other malicious individuals. If persons are only bound to aid an officer in such cases as he himself would be authorized to act, it is clear that the defendant in this case call'd aim no protection from the law, as nothing has been shown which could by possibility have given protection to the officer. We are, therefore, fully satisfied, from every view which we have been able to take of this case, that the judgment of the Circuit Court is right, and consequently ought to be affirmed. It is, therefore, considered and adjudged that the judgment of the Circuit Court of Ouachita county, herein rendered, be, and the same is hereby, affirmed.