# IN GENERAL TERM, 1872.

CHRISTIAN SCHAW *v.* WILLIAM DIETRICHS, CHARLES COULON, CHARLES G. COULON, HANS BLUME.

Appeal from RAND, Judge.

JUSTICE OF THE PEACE—*malfeasance of—writs issued by, must be to duly appointed officers—*
CONSTABLE—*when persons acting as, liable for trespass—*
ARREST AND FALSE IMPRISONMENT—*when ministerial officers and others are liable for.*

The provisions of the statute requiring a Justice of the Peace to record the appointment of a special constable on his docket, and to direct process to him by name, are imperative, and not directory.

A writ directed "to any Constable of the County, &c.," will not justify a trespass committed by such *special* Constable in attempting to serve such writ.

Parties acting at the instance of any one assuming the duties of a ministerial office, are bound to know whether he is in fact such officer, and whether he in fact bears that authority.

—. *Klingensmith,* for appellants.

*Baker,* and *Gordon, Brown & Lamb* for appellee.

NEWCOMB, J.—Dietrichs, as a Justice of the Peace, issued his warrant for the arrest of Schaw, the plaintiff in this case, to answer a charge of provoking one Smith to commit an assault and battery on him, Schaw, duly made under oath before said Justice. The writ was directed to "any constable of Marion county," but instead of being delivered to a constable, it was handed by the Justice to Charles G. Cou-

lon, who appears in the subsequent proceedings under the name of a special constable.

Coulon arrested Schaw, and brought him before the Justice. Soon after he was brought into the office of the Justice, the latter went to his dinner, Charles G. Coulon leaving at the same time. The Justice, and Coulon left the plaintiff in charge of Blume, who was a clerk in Dietrich's office. While they were absent the plaintiff started out of the office. Blume undertook to restrain him from going, and called for help, whereupon Charles Coulon, who was prosecuting the "provoke" case, came out of his own into the Justice's office, and ordered plaintiff to sit down, and behave himself until Esquire Dietrichs should return. Thereupon the plaintiff resumed his seat, and awaited the coming of the Justice. The weight of evidence is that Schaw was drunk when brought before the Justice, and on his return the latter issued a mittimus for the commitment of the former to jail, reciting in the mittimus that the trial of the charge was necessarily postponed by reason of the drunkenness of Schaw, and he having failed to give bail for his appearance in the sum of fifty dollars, the jailor was commanded to receive said Christian Schaw into his custody in the jail of said county, there to remain until discharged by due course of law.

Schaw was kept in jail until the next day, when, on the order of Justice Dietrichs, he was brought out, and the prosecution pending against him terminated in a finding of guilty, and a nominal fine, with costs. No record of the proceedings was made in the docket of Justice Dietrichs for more than a month afterward.

After his release, Schaw brought this suit for the alleged assault, arrest, and imprisonment. Dietrichs filed the general denial, and a second paragraph of answer, setting up the above recited proceedings before him against plaintiff, as a defense.

The other defendants pleaded the general denial separately.

Charles G. Coulon filed a second paragraph, justifying under the writ issued, and delivered to him by the Justice. The other defendants answered further in justification, that they acted as citizens under the command of Charles G. Coulon, as special constable.

The Court at Special Term sustained demurrers to all the special answers, to which defendants severally excepted. The cause was tried by jury—verdict against all the defendants for $500 damages. The defendants filed separate motions for a new trial. The plaintiff remitted $250 of the verdict, whereupon the Court overruled the motion for a new trial, and rendered judgment on the verdict.

The only real question presented by the record is, did the writ delivered by the Justice to Charles G. Coulon authorize him to arrest the plaintiff? If it did, the Justice acquired jurisdiction of the person of plaintiff, and such jurisdiction protected him from suit for subsequent irregularities; and the other defendants could justify under the writ. On the other hand, if the writ gave Charles G. Coulon no authority to make the arrest, he, and all others acting in the premises under his orders, as well as the Justice who committed plaintiff to jail after his arrest, are trespassers.

The statute defining the powers of Justices in State prosecutions—2 G. & H., 639—provides that special constables may be appointed under like circumstances, and such appointment impose like liabilities as in civil cases. The statute relative to such appointments in civil cases is as follows:

" Whenever there shall be no constable convenient, and in the opinion of the Justice an emergency exists for the immediate appointment of one, such Justice may appoint a special constable to act in a particular cause, and shall note such appointment and such cause on the docket, *and shall direct process to him by his name* and such constable so appointed shall discharge the duties, receive the fees, and

have the powers, in such cause, appertaining to the office."
2 G. & H., 607.

This statute was passed upon by the Supreme Court in
*Benninghoof* v. *Finney et al*, 22 Ind., 101, where it was held
that the provisions of the statute requiring the Justice to
note the appointment of a special constable on his docket,
and to direct process to him by name, are imperative, and
directory, and that a writ directed to any constable of the
county, &c., will not justify a trespass committed by such
special constable in attempting to serve such writ. Under
that decision, the defendants in this case were clearly tres-
passers in restraining the plaintiff of his liberty. No juris-
diction of his person was obtained, nor did he voluntarily
submit to the jurisdiction of the Justice. Indeed, the Jus-
tice's mittimus recites that he was too drunk to be tried. If
so, he was too drunk to submit himself to the jurisdiction of
the Justice, nor did he do so. He attempted to leave the
Justice's office, but was restrained from doing so by the
defendants Blume, and Charles Coulon. They were bound
to know whether Charles G. Coulon was a regular constable,
or if they acted under his orders as a special constable, they
were bound to know whether he in fact bore that authority.

The ruling of the Judge at Special Term on the demur-
rers, and in overruling the motion for a new trial, were
therefore right, and the judgment is affirmed, with costs.

NOTE.—In all cases where the cause of action against a *judicial* officer,
exercising only a special, and limited authority, is founded on his acts done
*colore officii*, the single inquiry is, whether he has acted without any juris-
diction over the subject matter, or has been guilty of an excess of jurisdic-
tion. 1 *Leading Criminal Cases*, 306. *See also* 1 *Chitty*, *Pl.*, (14 *Am. Ed.*),
181, *et seq*, *and notes;* 7 *Conn.*, 11, 95; 3 *Binney*, 404; 3 *Campbell*, 388; 15
*Johnson*, 121; 19 *do.*, 39; 7 *Wallace*, 523, 535.

If a magistrate acts beyond the limits of his jurisdiction, his proceedings
are deemed to be *coram non judice*, and void, and if he attempts to enforce
any process founded on any judgment, sentence, or conviction in such case,

he thereby becomes a trespasser. *Same, and* 2 *Gray*, 410; 3 *Wend.*, 202; 1 *Pet. U. S.*, 138; 1 *Wend.*, 126; 6 *do.*, 382; 4 *John*, 450.

With regard to inferior Courts, as compared with those of general jurisdiction, it is for them, when claiming any right, or exemption under their proceedings, to show affirmatively that they acted within the limits of their jurisdiction. *Peacock* v. *Bell*, 1 *Saunders*, 74, *and notes;* 19 *Johnson*, 33, 34. *See Taaffe* v. *Downes*, 3 *Moore Com. Pleas. Rep.*, 41, *and note* 2; 1 *Leading Crim. Cases,* (B. & H.), 320; 5 *Wend.*, 170; 12 *John.*, 257; 8 *Metcalf*, 326; 7 *do.*, 257; 14 *Conn.*, 200; 20 *Wend.*, 236; 12 *Vermont*, 661.

Justices of the Peace have always been held responsible to individuals, in civil suits, for all the injurious consequences arising from every illegal act they may have done, either in the adjudication of causes of which they had no jurisdiction, or in the exercise of their ministerial powers, or in the discharge of their ministerial duties. 1 *Gray*, 1: *and note, p.* 325, 2 *Leading Crim. Cases.*

If the want of jurisdiction over a particular case, is caused by matters of fact, it must be made to appear that they were known, or ought to have been known to the Judge, or Magistrate, in order to hold him liable for acts done without jurisdiction. 2 *Gray*; 410, 412.

If the act of a Justice, issuing a warrant, be. invalid on the ground that the party to whom issued was not duly authorized to receive, and execute it, all persons who act in the execution of the warrant will act without any authority; a Constable who arrests, and a jailor who receives a felon, will each be a trespasser, resistance to them will be lawful, everything done by either of them will be unlawful, and a Constable, or persons aiding him, may, in some possible instance, become amenable, even to a charge of murder, for acting under an authority which they reasonably considered themselves bound to obey, and of the invalidity whereof they are wholly ignorant. *p.* 3282 *Leading Crim. Cases. See also* 3 *Moore*, *C. P.*, 382; 10 *Wend.*, 128; 19 *Vt.*, 151. *See* 1 *Chitty Pl.*, (14 *Am. Ed.*) 184.

Requiring the Justice to insert in a record the process of every proceeding before him, and its final determination. *See* 11 *Allen*, 33, *in case of Kelly* v. *Dresser;* 4 *Metcalf*, 421.

Any general authority by Justices to fill up, or alter process would be void, and highly improper. 18 *Johns.*, 405.

When he exceeds his jurisdiction, responsibility attaches. 3 *Cranch.*, 331; 2 *Blackf.*, 429.

A Constable, whose office is wholly ministerial, may appoint a deputy to execute a warrant directed to him, * * but he can not make a deputy without some special cause. 2 *Hawk., Ch.*, 10 *Sec.* 36; 3 *Burr.*, 1259; 1 *Term Rep.*, 682. *See also* 1 *Leading Crim Cases*, 202, *and notes.*

If a warrant be directed to the Sheriff, he may command his bailiff, or other sworn and known officer to serve it, without writing any precept; but if he will command another man, that is no such officer, to serve it, he must

give him a written precept, otherwise an action of false imprisonemnt will lie. *Note* 3, 2 *Hale's Pl. Cr.*, 110.

A Constable having a warrant to apprehend the prisoner, gave it to his son, who went in pursuit, the father staying behind. In coming up to the prisoner, one of the sons laid hold of him, and was stabbed by the prisoner. The father was in sight. *Held by Parke, B.*—The arrest was illegal, the father being too far away to be assisting in it. *Same, p.* 115.

Liability of Justice for acts of special Constable, see *Sec.* 111, 2 *G. & H.*, 608.

Powers, and duties of constables. 2 *G. & H.*, 617, *and notes*.

The law does not hold out the same indemnity to private persons as it does to Constables and other peace-officers who are *ex officio* not merely permitted, but enjoined by law to arrest offenders. 1 *Russ on Cr*, 594. The party taking upon himself to execute process, whether by writ, or warrant, must be a legal officer for that purpose—*Same*, 614; 1 *Hale Pl. Cr.*, 457, 458, 459—and it must be executed by the party named in it, or by some one assisting such party. *Same*, 615, 616, *and note. See also* 1 *Leading Crim. Cases*, 202, *and notes.*—[REPORTER.